# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 97-3788
No. 97-3789

_____

In re: Elisabeth Scarborough,

    Debtor.

_____

Mark E. Fischer,

    Appellee/Cross-Appellant,

v.

Elisabeth Scarborough,

    Appellant/Cross-Appellee.

Appeal from the United States
District Court for the
Western District of Missouri.

_____

Submitted: November 19, 1998
Filed: March 31, 1999

_____

Before McMILLIAN, WOLLMAN, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Mark E. Fischer filed an adversary complaint in Elisabeth Scarborough's Chapter 7 bankruptcy proceeding, seeking to bar the discharge of a judgment debt he had

obtained against Ms. Scarborough. Applying the collateral estoppel doctrine, the bankruptcy court ruled that the actual damages portion of the judgment was not dischargeable under 11 U.S.C. § 523(a)(6) (1994), but that the punitive damages portion was dischargeable. Ms. Scarborough appealed the nondischargeability of the actual damages and Mr. Fischer cross-appealed the dischargeability of the punitive damages to the district court, which affirmed the bankruptcy court. Ms. Scarborough and Mr. Fischer now bring the same appeal and cross-appeal from the district court's ruling. We affirm in part and reverse in part.

## I.

Fischer and Scarborough were married in 1984 and divorced in 1986. Pursuant to the divorce decree, Ms. Scarborough had custody of their only son, Benjamin, and Mr. Fischer was allowed visitation. In 1989, Ms. Scarborough took Benjamin to the Grain Valley, Missouri, police station where Benjamin told police that his father, Fischer, had sodomized him when he was three. A police investigation followed and a grand jury indicted Fischer on felony child abuse charges. The criminal charges were eventually dismissed two years later. Ms. Scarborough also filed a petition for an ex parte order of protection in 1989 that was dismissed when she failed to appear at the hearing.

In 1991 Mr. Fischer filed a civil lawsuit against Ms. Scarborough in Missouri state court, alleging malicious prosecution and abuse of process. The jury returned a verdict in favor of Fischer, awarding him $50,000 in actual damages and $100,000 in punitive damages on the malicious prosecution claim and $50,000 in actual damages on the abuse of process claim. Ms. Scarborough did not appeal the state verdict.

Ms. Scarborough failed to pay the judgment and filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in 1996, seeking to discharge the judgment owed to Fischer. Mr. Fischer sought to bar the discharge under § 523(a)(6),

2

which excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or the property of another entity." The bankruptcy court determined that the jury in the state case necessarily found that Ms. Scarborough acted willfully and maliciously to injure Fischer based on the jury instructions for the underlying malicious prosecution and abuse of process claims. However, the bankruptcy court determined that Ms. Scarborough had not willfully and maliciously injured Fischer as to the punitive damages, and thus, that portion of the judgment debt was dischargeable. The bankruptcy court relied on its earlier case, In re Ratcliff, 199 B.R. 185 (Bankr. W.D. Mo. 1996), and the jury instructions that allowed the jury to award punitive damages based on reckless indifference. The district court affirmed the bankruptcy court's decision primarily for the reasons stated by the bankruptcy court.

## II.

In this appeal, we sit as a second court of review and apply the same standards as applied by the district court. See United States v. Roso (In re Roso), 76 F.3d 179, 181 (8th Cir. 1996). We review de novo the district court's conclusions of law, which include the application of collateral estoppel. See Tudor Oaks Ltd. Partnership v. Cochrane (In re Cochrane), 124 F.3d 978, 982 (8th Cir. 1997), cert. denied, 118 S. Ct. 1044 (1998).

Section 523(a)(6) provides that certain debts are not dischargeable in bankruptcy, namely those that are "for willful and malicious injury by the debtor to another entity." Willful and malicious are two distinct requirements that Fischer, as the party seeking to avoid the discharge of the debt, must prove by the preponderance of the evidence before the § 523(a)(6) exception to discharge applies. See Grogan v. Garner, 498 U.S. 279, 286-87 (1991) (holding that the preponderance of the evidence standard applies to § 523 claims); Johnson v. Miera (In re Miera), 926 F.2d 741, 743 (8th Cir. 1991) (noting that willful and malicious are distinct elements of the § 523(a)(6) exception). Willfulness is defined as "'headstrong and knowing' conduct and

3

'malicious' as conduct 'targeted at the creditor . . . at least in the sense that the conduct is certain or almost certain to cause . . . harm.'" In re Miera, 926 F.2d at 743-44 (quoting Barclays Am./Bus. Credit, Inc. v. Long (In re Long), 774 F.2d 875, 881 (8th Cir. 1985)). To give effect to the distinction between "malicious" and "willful," we have held that malice requires more than just reckless behavior by the debtor. Id. at 743. Scarborough must have acted with the intent to harm Fischer rather than merely acting intentionally in a way that resulted in harm. See Kawaauhau v. Geiger, 118 S. Ct. 974, 977 (1998).

Collateral estoppel is a legal doctrine that "bar[s] the relitigation of factual or legal issues that were determined in a prior . . . court action," and applies to bar relitigation in federal court of issues previously determined in state court. In re Miera, 926 F.3d at 743. We look to the substantive law of the forum state in applying the collateral estoppel doctrine, giving a state court judgment preclusive effect if a court in that state would do so. See Baker Elec. Coop., Inc. v. Chaske, 28 F.3d 1466, 1475 (8th Cir. 1994). Missouri courts consider four factors in applying collateral estoppel: (1) the issues in the present case and the prior adjudication must be identical; (2) the judgment in the prior adjudication must be on the merits; (3) "the party against whom collateral estoppel [is] asserted [must have been] the same party or in privity with a party in the prior adjudication;" and (4) "the party against whom collateral estoppel is asserted [must] have [had] a full and fair opportunity to litigate the issue in the prior suit." State v. Nunley, 923 S.W.2d 911, 922 (Mo. 1996) (en banc) (internal quotations and citations omitted), cert. denied, 519 U.S. 1094 (1997); see also Nichols v. City of St. Louis, 837 F.2d 833, 835 (8th Cir. 1988) (applying Missouri law). Additionally, "[t]he doctrine applies only to those issues that were necessarily and unambiguously decided." Nunley, 923 S.W.2d at 922.

## A.    Actual Damages

4

There is no dispute that the state court judgment is a valid and final judgment or that the determinations required by the jury instructions were essential to that judgment. It is also undisputed that the state court judgments were reached on a preponderance of the evidence standard, which is the same standard that applies to § 523(a)(6) dischargeability disputes under Grogan. See 498 U.S. at 286-87. The controversy concerns whether the issues were the same and whether Scarborough had a full and fair opportunity to litigate them.

Though Scarborough argues that legal mistakes were made in the state court trial, she did not appeal the state court judgment. "Whether a prior judgment is legally correct is not at issue in applying the doctrine of collateral estoppel." Buckley v. Buckley, 889 S.W.2d 175, 179 (Mo. Ct. App. 1994). See also Montana v. United States, 440 U.S. 147, 162 (1979) ("[A] fact, question or right distinctly adjudged in the original action cannot be disputed in a subsequent action, even though the determination was reached . . . by an erroneous application of the law.") (internal quotations and citations omitted) (emphasis in original); Richey v. United States Internal Revenue Serv., 9 F.3d 1407, 1412 (9th Cir. 1993) (relying on Montana and holding that even if the erroneous jury instruction in the previous case effectively directed a verdict against the defendant, it was still only a misapplication of the law and irrelevant to the issue of the prior judgment's preclusive effect for purposes of collateral estoppel). Scarborough "is attempting to achieve through the back door what [she] cannot do directly: that is, bring a subsequent action challenging a legal ruling in a prior action." Sil-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1521 (10th Cir. 1990). The purposes of collateral estoppel are to relieve parties of "the expense and vexation attending multiple lawsuits, conserve[] judicial resources, and foster[] reliance on judicial action by minimizing the possibility of inconsistent decisions." Montana, 440 U.S. at 153-54 (footnote omitted). To allow Scarborough to attack the state court judgment would eviscerate the doctrine of collateral estoppel. She had her chance to challenge the state court jury's decision by appealing to the state appellate court and declined to do so.

We must now decide whether the issues sought to be precluded from relitigation--whether Scarborough willfully and maliciously injured Fischer--are identical to the issues decided in the state trial. The bankruptcy court looked at the state trial proceedings, particularly the jury instructions, to determine whether the issues of "willfulness" and "maliciousness" were litigated in that case. Jury Instruction No. 9 for malicious prosecution read: "Your verdict must be for [Fischer] if you believe: First, [Scarborough] instigated a judicial proceeding against [Fischer] which terminated in favor of [Fischer] . . . ." (Appellee's App. at 149.) Instruction No. 10 further defined "instigated" to "mean[] that [Scarborough] stimulated, promoted or encouraged the specific action taken." (Id. at 150.) The malicious prosecution instruction required the jury to also find that "in so doing [Scarborough] acted primarily for a purpose other than that of bringing [Fischer] to justice and acted without reasonable grounds." (Id. at 149.) "Reasonable grounds" was further defined in Instruction 11 to "mean[] the existence of facts which would warrant an ordinarily cautious and prudent person in believing plaintiff Mark Fischer was guilty of the offense charged." (Id. at 151.) Finally, the jury was required to find that Fischer was damaged before holding Scarborough liable for malicious prosecution. (Id. at 150.)

Thus, when the jury held Scarborough liable for malicious prosecution, it necessarily found that Scarborough stimulated, promoted, or encouraged the criminal charges and the petition for a protective order that were brought against Fischer (and later dismissed); that she instigated the charges and the petition for a "purpose" other than bringing Fischer to justice; and that she did so under circumstances such that a reasonably prudent person would not believe that Fischer was guilty of sodomizing his son. In distinguishing reckless behavior from willful behavior for purposes of § 523(a)(6), Congress defined willful as "deliberate" or "intentional." See In re Miera, 926 F.3d at 744 (discussing legislative history of § 523(a)(6)). The terms describing "instigated" are clearly willful acts. To act with a purpose also clearly requires a willful act. Cf. Websters' Third New Int'l Dictionary 1847 (1986) (defining "purpose" as "something that one sets before himself as an object to be attained : an end or aim to

6

be kept in view."). We conclude that the jury's findings that Scarborough "instigated" the actions and "acted . . . with a purpose" necessarily required a finding that Scarborough acted willfully.

Before § 523(a)(6) applies to exempt the judgment from discharge, Scarborough's actions must also have been malicious, or targeted at Fischer, so that Scarborough was "certain or almost certain to cause [Fischer] . . . harm." In re Miera, 926 F.3d at 743-44. The criminal charges and protective order were clearly aimed at Fischer as the defendant in the criminal charges and as the object of the protective order. Similarly, they were certain to cause Fischer harm by preventing him from seeing his son and by exposing him to possible criminal sanctions of imprisonment, fines, and a criminal record as a sex offender. Thus, as a matter of law, we conclude that the state judgment in favor of Fischer on the malicious prosecution claim necessarily included a finding that Scarborough wilfully and maliciously sought to injure Fischer. Cf. Wilson v. Schoor (In re Schoor), 139 B.R. 466, 468 (W.D. Mo. 1992) (finding issues litigated in a malicious prosecution case to be the same issues involved in a subsequent § 523(a)(6) dischargeability suit). The state court judgment collaterally estopped the relitigation of that issue in Fischer's adversary proceeding concerning the malicious prosecution judgment debt.

The jury instruction for abuse of process required the jury to find that "[f]irst, [Scarborough] made an illegal, improper, perverted use of process that was neither warranted nor authorized by the process, and [s]econd, [Scarborough] had an improper purpose in exercising such illegal, improper or perverted use of process, and [t]hird, [Fischer] was thereby damaged." (Appellee's App. at 154.) Thus, the jury found that Scarborough had an "improper purpose" that was "neither warranted nor authorized" when she instigated (according to the jury) the criminal charges and sought the protective order against Fischer. As stated above, acting with a purpose is synonymous with acting willfully. Again, "maliciously" requires that Scarborough's actions were certain or almost certain to cause Fischer harm. The criminal charges and protective

7

order were certain to cause Fischer harm in the same ways under the abuse of process claim as under the malicious prosecution claim. Thus, as a matter of law, we hold that the issue of whether Scarborough acted willfully and maliciously in abusing judicial process was necessarily decided in the state case. The bankruptcy court correctly found that this matter could not be relitigated in the bankruptcy proceeding pursuant to the collateral estoppel doctrine.

### B.    Punitive Damages

Fischer received punitive damages only on the malicious prosecution claim. The bankruptcy court found, and the district court agreed, that the issue of punitive damages in the state trial did not involve the same issue of willful and malicious action addressed in the bankruptcy proceeding because the jury instruction for punitive damages in the state case allowed a punitive damages award if Scarborough acted only recklessly. The punitive damages instruction read:

> If you find the issues in favor of [Fischer], and if you believe the conduct of [Scarborough] as submitted in either Instruction Number 9 or Instruction Number 13 was outrageous because of defendant's evil motive or reckless indifference to the rights of others, then in addition to any damages to which you find [Fischer] entitled under either Instruction Number 9 or Instruction Number 13, you may award [Fischer] an additional amount as punitive damages in such sum as you believe will serve to punish [Scarborough] and to deter [Scarborough] and others from like conduct.

(See Appellee's App. at 147.)

We believe that the bankruptcy court was misled by these instructions. The jury reached the issue of punitive damages only after it first found that Fischer was entitled to damages on the underlying claims. Thus, before the jury awarded punitive damages based on malicious prosecution, it first had to find that Fischer met his burden of

proving liability for the underlying malicious prosecution claim. As we have already discussed, in finding in favor of Fischer on the malicious prosecution claim, the jury necessarily found that Scarborough acted willfully and maliciously to injure Fischer. The actual and punitive damages are based on the same conduct. We need not look at the state's standard for awarding punitive damages because the jury already found that Scarborough's conduct in the underlying malicious prosecution claim, for which the punitive damages were also awarded, was willful and malicious. See In re Miera, 926 F.2d at 745 (holding that punitive damages, which are based on the same underlying action justifying nondischargeability of compensatory damages, are likewise nondischargeable); see also Schoor, 139 B.R. at 468 (applying In re Miera and holding punitive damages nondischargeable where actual damages were nondischargeable without looking at specific jury instructions for punitive damages). We hold that where the compensatory and punitive damage awards are based on the same underlying conduct, and the judgment for compensatory damages is nondischargeable because it is based on willful and malicious injury to another, then the punitive damages award is likewise nondischargeable.

The district court reluctantly distinguished In re Miera, noting that the jury instructions in the underlying case in In re Miera allowed an award of punitive damages if the debtor's acts were based on "willful indifference" to the rights of the plaintiff. Thus, in In re Miera, punitive damages were awarded only if the conduct was willful. Under the instructions in this case, punitive damages could have been awarded if Scarborough merely acted with reckless indifference to others. We need not distinguish In re Miera in the same manner as the district court did, however, because, as noted above, the willful and malicious conduct underlying the actual damages and the punitive damages is the same. The jury in the state case found that Scarborough willfully and maliciously injured Fischer by instigating the criminal charges and the petition for a protective order. Scarborough's willful and malicious conduct resulted in the actual damages and, with the jury's finding of outrageousness, supported the punitive damages. Because the holding in In re Ratcliff, 199 B.R. 185 (Bankr. W.D.

Mo. 1996), the decision relied on by the bankruptcy court in this case, differs from our opinion, we decline to follow it.

Finally, we note that our holding today regarding the dischargeability of punitive damages is consistent with our sister Circuits. See Abbo v. Rossi, McCreery & Assocs., Inc. (In re Abbo), No. 97-4482, 1999 WL 95060, at *2 (6th Cir. Feb. 25, 1999) (holding punitive damages nondischargeable under § 523(a)(6) when such damages are based on the same conduct as the underlying nondischargeable judgment); Hagan v. McNallen (In re McNallen), 62 F.3d 619, 626-27 (4th Cir. 1995) (same; collecting cases); Moraes v. Adams (In re Adams), 761 F.2d 1422, 1428 (9th Cir.1985) (holding that the applicability of § 523(a)(6) is determined by the nature of the act and applies to all liabilities flowing therefrom).

## III.

For the foregoing reasons, we affirm the district court's judgment on the nondischargeability of the $100,000 in actual damages and reverse the district court's judgment on the dischargeability of the $100,000 in punitive damages.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

10