**In re Elisabeth Ann WHITE, Debtor.**

**No. 00–42091.**

United States Bankruptcy Court,
W.D. Missouri.

Nov. 13, 2000.

Bruce E. Strauss, Merrick Baker Strauss, Kansas City, MO, for debtor.

Ronald K. Barker, Kansas City, MO, for objecting creditor.

1. Fischer's Ex. # 19.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Chief Judge.

On June 5, 2000, debtor Elisabeth Ann White, f/k/a Elisabeth Ann Fischer, f/k/a Elisabeth Ann Scarborough, f/k/a Elisabeth Ann White–Holland (White) filed this Chapter 13 bankruptcy case. Creditor and former husband Mark E. Fischer filed an objection to the confirmation of White's proposed Chapter 13 plan, claiming that White filed the case in bad faith. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I will sustain Fischer's objection to confirmation of the Chapter 13 plan as proposed.

## FACTUAL BACKGROUND

White is not a stranger to the legal system, and some background of past legal proceedings is necessary for a determination of the matter at hand. White and Fischer have a son named Benjamin, who was born on October 18, 1983. On August 13, 1984, White and Fischer were married, and on February 4, 1986, they were divorced. White was granted custody of Benjamin, and Fischer was allowed visitation. White was also awarded the marital home she had shared with Fischer at 1205 Golfview, Grain Valley, Missouri.

On July 30, 1986, White married Gary Wayne Scarborough. On October 7, 1986, White and Fischer entered into an Agreement whereby White transferred her interest in the home at 1205 Golfview to Fischer.[1] She also signed a quit-claim deed to this property, though the quit-

claim deed was never recorded.[2] Both White and Fischer testified that Fischer has lived in the house since 1986, and that he has made all of the mortgage payments since that time. Neither White nor Fischer was certain who had assumed responsibility for recording the deed.

According to an Eighth Circuit Opinion entered in 1999,[3] White took Benjamin to the Grain Valley police station in 1989, when he was about six years old, and he told the police that Fischer had "sodomized him when he was three."[4] Following a police investigation, Fischer was indicted on felony child abuse charges, however, the charges were dismissed two years later. On March 2, 1989, White also filed an ex parte order of protection against Fischer, but it was dismissed when she failed to appear at the hearing scheduled on April 6, 1989.[5]

On September 10, 1991, Fischer filed a civil lawsuit against White in Missouri state court, alleging malicious prosecution and abuse of process. On October 14, 1993, the jury in that case found in favor of Fischer and awarded him $100,000 in actual damages and $100,000 in punitive damages. That judgment was never appealed.

White has made no payments to Fischer pursuant to the judgment, and on March 13, 1996, she filed a Chapter 7 bankruptcy petition attempting to discharge the judgment debt. Fischer filed an adversary proceeding objecting to the discharge of the debt. On March 31, 1999, the Eighth Circuit held that the judgment debt in the amount of $200,000 was nondischargeable.[6] In the meantime, on July 17, 1996, White had received a discharge of all her other debts, and the Chapter 7 case had been closed.

On January 3, 1989, subsequent to their marriage, White and Scarborough purchased a home located at Route 2, Box 9, Bates City, Lafayette County, Missouri (5404 Walton Road). She and Scarborough had three children, and they separated in March of 1995. On June 10, 1997, a fourth child, Jordan Rory Holland, was born to White. White, Scarborough, and Benjamin Rory Holland (Holland) agreed that Holland is the father of Rory. On August 25, 1997, the Circuit Court of Jackson County, Missouri (the State Court) entered a Judgment and Decree of Dissolution (the Decree) dissolving White's marriage to Scarborough.[7] The State Court awarded White and Scarborough joint custody of their three children and designated White as the primary custodial parent. The State Court also awarded White the marital residence at 5404 Walton Road, Bates City, Missouri, which the State Court found had a value of $100,000 and a mortgage of $46,394. In exchange, the State Court ordered White to execute a promissory note secured by a second deed of trust to Scarborough in the amount of $16,303. She apparently executed the promissory note, but the land records show no second deed of trust was ever recorded. The promissory note was due and payable on September 1, 1998, but no payments have been made. The State Court denied White's request for maintenance, finding that White "is able-bodied and employable, and is capable of meeting her own reasonable needs through employment."[8]

White testified that she married Holland in 1997 and dissolution of that marriage is now pending in the Circuit Court of Jackson County, Missouri.

On August 19, 1997, just prior to the dissolution of White's marriage to Scarbor-

---

**2.** Fischer's Ex. # 20.

**3.** *Fischer v. Scarborough (In re Scarborough),* 171 F.3d 638 (8th Cir.1999).

**4.** *Id.* at 640.

**5.** *Id.*

**6.** *Id.* at 645.

**7.** Fischer's Ex. # 22.

**8.** *Id.* at pg. 7, ¶ 23.

ough, "Benjamin Fischer, by and through his next friend, Elisabeth White Scarborough" filed a Petition (CV97–020788) in the Circuit Court of Jackson County, Missouri against Mark Fischer and Bonnie Fischer (the Petition).[9] The Petition alleges that in 1988 Fischer "orally fellate[d]" Benjamin Fischer during visitation, and that Bonnie Fischer, Fischer's current wife, was present in the home and did nothing to prevent the sexual abuse.[10] On December 23, 1999, the Circuit Court of Jackson County, Missouri granted defendants' motion for summary judgment, finding that White was collaterally estopped from litigating the issues alleged in the Petition, since a jury in 1993 found in favor of Fischer on these same charges.[11] On February 1, 2000, White appealed the judgment. That appeal is still pending in the Missouri Court of Appeals for the Western District.[12]

White has never made any payments to Fischer pursuant to the 1993 judgment. On February 18, 1998, Fischer filed a transcript of the 1993 judgment in the Circuit Court of Lafayette County, Missouri, and on November 3, 1999, Fischer caused a general execution to be issued by the office of the Circuit Clerk of Lafayette County, Missouri. On November 16, 1999, the Sheriff of Lafayette County, Missouri filed a Notice of Levy on Real Estate as to White's property located at 5404 Walton Road, Bates City, Lafayette County, Missouri.[13] At the time of the Notice, the debt subject to the execution was in the amount of $308,591.84.[14] On May 22, 2000, the Circuit Court of Lafayette County, Missouri held a hearing at which it determined the value of the real estate located at 5404 Walton Road to be $110,000, determined the loan payoff balance to be $40,135.91, determined that the real estate had

value sufficient to accommodate White's claim of a homestead exemption in the amount of $8000, and ordered the Sheriff of Lafayette County to conduct an execution sale. The execution sale was scheduled for June 6, 2000, at 1:30 p.m.[15]

The execution sale did not take place, however, because on June 5, 2000, White filed this Chapter 13 bankruptcy case as an emergency filing. On her bankruptcy schedules, filed on June 15, 2000, White lists as an asset of her bankruptcy estate two parcels of real estate. The first is the property located at 5404 Walton Road. White values that property at $110,000, encumbered by a voluntary lien in the amount of $40,159 and Fischer's judgment lien in the amount of $200,000. The other is the property located at 1205 Golfview Drive. She claims that property has a value of $65,000 and a lien in the amount of $23,000. This is the property that she voluntarily transferred to Fischer, and in which Fischer resides. On those same schedules White lists her income as $2,756.40 and her expenses as $2,463.95. Despite the fact that her schedules show disposable income in the amount of $292.45, her Chapter 13 plan proposes to pay to the Chapter 13 trustee the sum of $1,135 per month for 60 months.

White also lists as assets of unknown value a civil assault cause of action against Benjamin Holland, her estranged husband, and a malpractice lawsuit against a former attorney. In addition to the unsecured portion of Fischer's judgment debt, White lists four other unsecured creditors, with total unsecured nonpriority debt in the amount of $23,053.

The proposed Chapter 13 plan and plan summary proposes to transfer White's interest in the Golfview Drive real estate to Fischer, and to pay Fischer a total of

9. Fischer's Ex. # 16.

10. *Id.*

11. Fischer's Ex. # 18.

12. *Id.*

13. Fischer's Ex # 8.

14. *Id.*

15. Fischer's Ex. # 10.

$61,841 over 60 months in full satisfaction of his judgment debt. According to Fischer's proof of claim, as of June 5, 2000, the amount of the judgment debt was $319,590.20. The unsecured creditors will not receive any payments under the plan as proposed.

White now has six children residing with her. She receives child support from Fischer, Scarborough and Holland for her five biological children in the awarded amount of $1,355.40 per month, and she receives AFDC payments in the amount of $136.00 per month for her ward, Derek Chouteau. In addition, White testified that she works as an independent contractor cleaning offices part-time and earns $1,265 per month.

Fischer filed an Objection to Confirmation of the Proposed Chapter 13 Plan, arguing that the plan was not proposed in good faith, and that White is unable to make the payments required by the plan. This Court scheduled a confirmation hearing and Fischer's objection thereto on October 23, 2000.

At the hearing, Fischer testified that he has incurred significant debt over the past ten years as a result of White's false accusations against him. He stated that he still owes the guardian ad litem over $8000 since the divorce, that he owes the court-appointed psychologist money, and that he owes attorney's fees. In addition, Fischer stated that he incurred appraiser fees and publication costs for the execution sale that was stayed by this bankruptcy filing. He stated that he began execution on the real estate in Lafayette County, Missouri because he needed to finally collect on the judgment in order to pay some of his debts. Fischer also testified that he owes White $400.00 for past due child support for Benjamin.

White's father, Frank Terry White, also testified at the hearing. He stated that he is prepared to supplement White's plan payments by the amount of $1000 per month. Frank White's personal financial statement, and the income statements from two of his companies were produced *in camera* for this Court's examination, in order to determine if White's plan is feasible. Frank White testified that he offered Fischer $25,000 in full satisfaction of the judgment, but that Fischer refused the offer. Frank White stated that he is willing to make this commitment to allow White to keep her home.

White testified that she is working part-time for ACT Trucking performing housekeeping tasks. She says she is paid by check and that ACT Trucking does not withhold any taxes. She stated that she is physically incapable of working full-time. White's bankruptcy schedules indicate that she earned $9380 in 1998 and $9560 in 1999 from her work as a housekeeper. White testified that she filed the bankruptcy to protect her home. She stated she can make the payments required by the Chapter 13 plan with her father's help. She said she waited to file the Chapter 13 case until the day before the foreclosure sale because she did not believe she was eligible to file another case. She said she went to see bankruptcy counsel at the urging of her father. And she acknowledged that her father is paying her attorney's fees. She stated that she cannot save her home if she is not allowed to proceed in Chapter 13. White said her father will make her plan payments. She also stated that she listed every creditor of which she was aware. She said Benjamin in now living with her, though at various times he has lived with her mother.

White admitted that she did sign a quitclaim deed assigning her interest in the Grain Valley real estate to Fischer, but the deed was never recorded. There is some dispute as to who was supposed to record the deed. Fischer claims White's attorney agreed to record the deed. White claims Fischer was supposed to record the deed. In any event, White claims an interest in the property now, but is prepared to transfer the property to Fischer.

Fischer maintains that White's plan is not proposed in good faith as required by 11 U.S.C. § 1325(a)(3), therefore, this Court must deny confirmation.

White argues that she filed this case only to save her home for the benefit of her six children, that she will pay Fischer the value of her nonexempt assets over the life of the plan, and that she is devoting all of her disposable income to her plan payments, as required by 11 U.S.C. § 1325(b)(1). I begin with Fischer's argument that White did not propose the plan in good faith.

## DISCUSSION

The Code provides that a Chapter 13 debtor must propose a Chapter 13 plan in good faith in order for a Court to confirm the plan:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

\* \* \* \* \* \*

(3) the plan has been proposed in good faith and not by any means forbidden by law.[16]

The Code does not define good faith in the Chapter 13 context, probably because the term defies definition. The Sixth Circuit states that "[g]ood faith is an amorphous notion, largely defined by factual inquiry."[17] Most circuits, in fact, use a flexible "totality of the facts and circumstances" approach when analyzing good faith.[18] As a result of this totality of the circumstances approach, case law prior to 1984 developed a number of factors to guide the Court in determining whether a Chapter 13 plan had been proposed in good faith.

In *United States v. Estus (In re Estus)*,[19] the Eighth Circuit held that a Chapter 13 plan is not proposed in good faith if the plan "constitutes an abuse of the provisions, purpose or spirit of Chapter 13."[20] In determining whether there is abuse, the *Estus* Court examined the following factors: (1) the amount of the proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan's statements of the debts, expenses, and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and (11) the burden which the plan's administration would place upon the trustee.[21] In 1984, however, Congress amended the Code and added, as a requirement for confirmation, that a Chapter 13 plan propose to commit all of a debtor's disposable income to plan payments:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court

**16.** 11 U.S.C. § 1325(a)(3).

**17.** *Metro Employees Credit Union v. Okoreeh–Baah (In re Okoreeh–Baah)*, 836 F.2d 1030, 1033 (6th Cir.1988).

**18.** *See, e.g., Handeen v. LeMaire (In re LeMaire)*, 898 F.2d 1346, 1353 (8th Cir.1990); *Okoreeh–Baah*, 836 F.2d at 1033 (citing *In re Chaffin*, 816 F.2d 1070, 1074 (1987), *modified on other grounds*, 836 F.2d 215 (5th Cir.1988); *In re Johnson*, 708 F.2d 865, 868 (2nd Cir.

1983); *In re Kitchens*, 702 F.2d 885, 888–89 (11th Cir.1983); *In re Estus*, 695 F.2d 311, 316–17 (8th Cir.1982); *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir.1982); *In re Goeb*, 675 F.2d 1386, 1389–90 (9th Cir.1982); *In re Rimgale*, 669 F.2d 426, 432 (7th Cir.1982)).

**19.** 695 F.2d 311 (8th Cir.1982).

**20.** *Id.* at 316.

**21.** *Id.* at 317.

may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.[22]

In *Education Assistance Corporation v. Zellner (In re Zellner)*,[23] the Eighth Circuit held that the "disposable income test" of section 1325(b) subsumed most of the *Estus* factors.[24] Thus, for example, since a debtor is now required to make all surplus income available to creditors, the first *Estus* factor is superfluous. But, even if a debtor commits all of her disposable income to her plan payments, the Court must still determine if the debtor's plan, as proposed, abuses the provisions, purpose, or spirit of the Code.[25] A Chapter 13 plan, therefore, according to the *Zellner* Court, is proposed in good faith if the Court finds that the debtor has accurately stated her debts and expenses; that she has made no fraudulent misrepresentations to the Court; and that she has not unfairly manipulated the Code.[26]

The Sixth Circuit, in *Metro Employees Credit Union v. Okoreeh–Baah (In re Okoreeh–Baah)*,[27] articulated a good faith test that considers the ability to pay criteria of section 1325(b) in conjunction with criteria not subsumed in the 1984 amendments to the Code:

The bankruptcy court must ultimately determine whether the debtor's plan, given his or her individual circumstances, satisfies the purposes undergirding Chapter 13: a sincerely-intended repayment of pre-petition debt consistent with the debtor's available resources.[28]

In the Eighth Circuit the leading case on good faith in Chapter 13 is *Handeen v. LeMaire (In re LeMaire)*.[29] In that case the Court considered not only whether LeMaire stated his debts and expenses accurately, whether he made any misrepresentations on his schedules, whether he committed all of his disposable income to the plan, and whether he was manipulating the Code, but also LeMaire's pre-petition conduct that resulted in the debt.[30] The *LeMaire* Court relied in part upon the fact that LeMaire's pre-petition conduct gave rise to a debt that would have been nondischargeable had he filed a Chapter 7 case.[31] The facts in *LeMaire*, however, are unique and, therefore, significant to any determination of the weight a Court should accord pre-petition conduct in its good faith analysis.

---

22.  11 U.S.C. § 1325(b).

23.  *Education Assistance Corporation v. Zellner (In re Zellner)*, 827 F.2d 1222 (8th Cir.1987).

24.  *Id.* at 1227.

25.  *Id.*

26.  *Zellner*, 827 F.2d at 1227.

27.  836 F.2d 1030 (6th Cir.1988).

28.  *Id.*, at 1033.

29.  898 F.2d 1346 (8th Cir.1990).

30.  *Id.*, at 1355–56.

31.  *Id.*, at 1349.

In *LeMaire*, Handeen had gone to pick up his son and found LeMaire, an acquaintance, waiting for him. When Handeen got out of his car, LeMaire shot at him nine times with a Bolt action rifle. Five of those shots struck Handeen. LeMaire, declaring that he had intended to kill Handeen, pled guilty to a charge of aggravated assault and was sentenced to imprisonment. Handeen brought a civil suit against LeMaire and obtained a consent judgment in the amount of $53,362.50. After being released from prison, and obtaining employment, LeMaire filed a Chapter 13 case and proposed to pay approximately 42 percent of the unsecured claims, consisting principally of the claim due Handeen.[32] The Court found there to be no question that LeMaire's assault inflicted a "willful and malicious" injury upon Handeen, and that the obligation due him would have, therefore, not been dischargeable in a Chapter 7 proceeding.[33] The Eighth Circuit pointed out that Section 523(a)(6) is not applicable in Chapter 13 cases; thus, debts for willful and malicious injury are dischargeable in Chapter 13, if all payments are made under a confirmed plan. The Court found that a Chapter 13 plan may be confirmed despite the most egregious pre-petition conduct, if other factors suggest that the plan nevertheless represents a good faith effort by the debtor to satisfy his creditors' claims. However, the Court did add that pre-petition conduct is a factor to be considered in any determination of good faith.[34]

The *LeMaire* Court began with the presumption that the debtor's conduct gave rise to a debt that would not have been dischargeable in a Chapter 7 case.[35] And, the Court pointed out that determining whether a debtor has attempted to unfairly manipulate the Code is "central to the Court's task of determining whether the plan 'constitutes an abuse of the provi-

sions, purpose or spirit of Chapter 13.' " [36] Thus, taking into consideration all of the factors discussed above, I find that a good faith determination requires the Court to consider the following: (1) whether the debtor has stated her debts and expenses accurately; (2) whether the debtor has made fraudulent misrepresentations to mislead the bankruptcy court; (3) whether the debtor has unfairly manipulated the Code; (4) whether any of the debts would be nondischargeable in a Chapter 7 case; (5) whether the debtor has used her best efforts to satisfy the obligation; and (6) the egregiousness of debtor's pre-petition conduct. The weight the Court should assign to each of these factors is dependent upon the facts of each case.

In this case I find that White stated her debts and expenses accurately. Counsel for Fischer challenged the accuracy of the schedules in only one respect, arguing that the schedules were not accurate because White failed to list the attorney general for the State of Missouri as a creditor. Fischer's counsel maintains that a portion of each punitive damage award is payable to a victim's fund administered by the attorney general, therefore, the attorney general is a creditor and should be listed as such on a debtor's bankruptcy schedules. White's counsel called the Chapter 13 trustee as a witness. On cross-examination, the Chapter 13 trustee testified that he was unaware of such a requirement. And White testified that she was unaware of the requirement as well. I find White's testimony credible that she was unaware of the State of Missouri's requirement.

As to the second factor, I find that White's plan as proposed contained at least one misrepresentation, based upon the evidence offered at the hearing. In her Chapter 13 plan, White proposed to trans-

---

**32.** *See generally Id.,* at 1347.

**33.** 11 U.S.C. § 523(a)(6).

**34.** *See LeMaire,* 898 F.2d at 1352.

**35.** *Id.* at 1350.

**36.** *Id.* at 1351 (citations omitted).

fer to Fischer her interest in real estate located at 1205 Golfview Drive, Grain Valley, Missouri. She valued that interest at $65,000 with a lien of $23,000. Both White and Fischer testified that White transferred whatever interest she had in that property to Fischer in 1986, and that Fischer has resided in, and made all of the mortgage payments on, that property for a minimum of 18 years. Despite the fact that the quit-claim deed has never been recorded, White's plan as proposed misrepresents to this Court that she is surrendering to Fischer property in which she holds some economic interest. Nevertheless, given the confusion as to ownership of the property, and who was obligated to record the deed, I find that any misrepresentation as to that property was not fraudulent.

I also find, however, that White filed this case when she did in an effort to manipulate the Code. She filed a Chapter 7 petition in 1996. The Court in that case found this debt to be nondischargeable. She was aware of Fischer's efforts to foreclose on her home for at least 6 months.[37] And yet, she waited until he had incurred the expense of appraising the property, and publicizing the sale, before she filed this Chapter 13 petition.

As to whether the judgment debt in this case would be presumed nondischargeable in a Chapter 7 case, no presumption is necessary here. The bankruptcy court has already determined that White's debt to Fischer was nondischargeable in her Chapter 7 case.

I further find that White has made no efforts to satisfy this obligation, let alone her best efforts to do so. She has made no payments on this debt since the judgment was entered against her in 1993. In a letter dated February 1, 1995, to the Hon-

orable Jack Gant, Circuit Court Judge of Jackson County, Missouri, White stated that she "never had the money, and I never will. I have no income and I never will."[38] In that same letter, White claims she has been disinherited by her "folks."[39] White initially tried to discharge the debt when she filed the Chapter 7 bankruptcy petition. This Court found the debt to be nondischargeable, and still she made no payments. White testified that she is physically incapable of working full-time, but the Honorable Sherrill L. Rosen, Commissioner of the Circuit Court of Jackson County, Missouri, denied White's request for maintenance when her marriage to Scarborough was dissolved. Commissioner Rosen found no medical evidence to support White's claim that she is unable to work, and stated that White is "able-bodied and employable, and is capable of meeting her own reasonable need through employment."[40]

As to White's pre-petition conduct, the evidence presented at the hearing was limited to White's conduct after the Circuit Court entered judgment against her, since this Court has already determined that her conduct giving rise to the judgment was willful and malicious. I find White's conduct subsequent to the judgment, and prior to the filing of this case, to be an abuse of the purpose and spirit of Chapter 13.[41] White has consistently evaded the effects of the judgment debt. She has made no payments since 1993. She has not obtained full-time employment in an effort to pay the debt. She filed another lawsuit against Fischer, which caused him to incur additional attorney's fees, even though he prevailed on a summary judgment motion.[42] She waited until Fischer had incurred over $1500 in appraisal fees and publication costs before she filed this case to prevent the foreclosure sale. She pro-

---

37. *See* Fischer's Ex. # 8.

38. Fischer's Ex. # 6.

39. *Id.*

40. Fischer's Ex. # 22, pg. 7.

41. *Ed. Assistance Corp. v. Zellner (In re Zellner)*, 827 F.2d 1222, 1227 (8th Cir.1987).

42. Fischer's Ex. 16 and 18.

posed a plan that purported to transfer to Fischer real estate with a net value of $42,000, when, in fact, she had already agreed to transfer that property to Fischer in 1986, and he has been making mortgage payments on the property since that time. And, as to her homestead, upon which Fischer has a judgment lien, she intends to pay him the value of the lien over 60 months, without interest, from contributions to be made by her father each month.[43] She stated to Judge Gant in 1995 that she had been disinherited by her parents, but she testified at the hearing that her mother has provided a home for Benjamin at times, and her father testified that he is prepared to subsidize her Chapter 13 plan payments. Frank White also testified that he offered to pay Fischer $25,000 in full satisfaction of the judgment debt, and that he is paying White's attorney's fees in this case. I note that White cannot propose a confirmable plan without the subsidy from her father, as she has too little disposable income to pay Fischer the present value of his secured claim.

Having weighed the six enumerated factors, I cannot find that White's plan was proposed in good faith. Fischer obtained a civil judgment in 1993. The judgment debt is now in excess of $300,000, and White has made no payments. Instead, she has consistently attempted to circumvent the judgment. She has not obtained full time employment since 1993. She filed a Chapter 7 bankruptcy in 1996 to discharge the judgment debt, without success. In 1997, White filed another lawsuit in state court attempting to obtain a civil judgment against Fischer and his wife based on similar allegations of sexual assault on Benjamin. She has insufficient disposable income to pay Fischer the present value of his allowed secured claim.

She is, therefore, able to propose a Chapter 13 plan only because her father is willing to subsidize her plan payments. And her father is willing to pay Fischer over time, and without interest, what Fischer would have received if he had foreclosed his judgment lien. In addition, she proposes no payments to her unsecured creditors. In *Neary v. Padilla (In re Padilla),*[44] the Ninth Circuit discussed the Code's requirement that a Chapter 13 debtor propose a plan in good faith.[45] The Court found that the debtor/creditor relationship is quite different in a reorganization, as opposed to a liquidation, bankruptcy. According to the Ninth Circuit, a "Chapter[ ] 13 ... permit[s] the debtor to 'retain its assets and reorder its contractual obligations to its creditors. In return for these benefits, ... the debtor [must] approach its new relationship with the creditors in good faith.' "[46] In other words, for a bankruptcy court to find that the Chapter 13 plan is proposed in good faith, it must find that the debtor's behavior demonstrates a genuine desire to pay her debts to the best of her ability. Under these facts, I cannot so find. Instead, I find that this Chapter 13 case is an attempt to unfairly manipulate the Code to discharge a debt that is nondischargeable in Chapter 7. This filing is consistent with White's pattern of attempting to erode the effect of the state court's final judgment, without using her best efforts to satisfy her obligation.

I, therefore, find that White has not proposed her Chapter 13 plan in good faith. As such, I will sustain Fischer's objection to confirmation and deny confirmation of the plan as proposed. White has 15 days from the date of this Memorandum Opinion to propose an amended plan. There is no pending motion for relief from

---

**43.** 11 U.S.C. § 1325(a)(5). *See also Cohen v. Werner (In re Cohen),* 13 B.R. 350, 355 (Bankr.E.D.N.Y.1981) (holding that a secured creditor is entitled to the present value equivalent of his allowed secured claim, and that includes interest sufficient to protect him from loss due to the deferred payment).

**44.** 222 F.3d 1184 (9th Cir.2000).

**45.** *Id.* at 1193.

**46.** *Id.* (citations omitted).

the automatic stay at this time, however, in the event White is unable to propose a confirmable plan, cause may exist to lift the automatic stay to allow Fischer to foreclose his judgment lien.

An Order in accordance with this Memorandum Opinion will be entered this date.