# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3280

_____

National Union Fire Insurance             *
Company of Pittsburgh,                     *
                                           *
        Plaintiff-Appellant,               *
                                           *   Appeal from the United States
        v.                                 *   District Court for the
                                           *   Northern District of Iowa.
Terra Industries, Inc.; Terra             *
Nitrogen, (UK) Limited,                    *
                                           *
        Defendants-Appellees.              *
_____                     *
                                           *
Terra Industries, Inc.; Terra             *
Nitrogen, (UK) Limited,                    *
                                           *
        Counter Claimants-Appellees,       *
                                           *
        v.                                 *
                                           *
National Union Fire Insurance             *
Company of Pittsburgh,                     *
                                           *
        Counter Defendant-Appellant.       *

_____

Submitted: June 12, 2003
        Filed: October 17, 2003 - Corrected 10/23/03

_____

Before RILEY and HEANEY, Circuit Judges, and ERICKSEN,[1] District Judge.
_____

RILEY, Circuit Judge.

National Union Fire Insurance Company of Pittsburgh (National Union) brought an action against Terra Industries, Inc. and Terra Nitrogen, (UK) Limited (collectively Terra) in federal district court[2] seeking a declaratory judgment defining National Union's obligations to defend and indemnify Terra under a commercial umbrella insurance policy (policy). National Union appeals the entry of summary judgment in favor of Terra. We affirm.

I.      BACKGROUND

A.      Factual Summary

National Union issued Terra a policy for the period July 1, 1997, to July 1, 2000. The policy provided:

> We will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury that takes place during the Policy Period and is caused by an Occurrence happening anywhere in the world.

The policy defined "property damage" as:

---

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable Mark W. Bennett, Chief Judge of the United States District Court for the Northern District of Iowa.

1. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the Occurrence that caused it.

The policy defined an "occurrence" with respect to property damage as "an accident, including continuous or repeated exposure to conditions, which results in Bodily Injury or Property Damage neither expected nor intended from the standpoint of the Insured." The policy further provided that National Union has the "right and duty" to provide Terra with a defense against any claim or suit for damages against Terra that is covered by the policy. In consideration for the policy, Terra paid National Union a premium in excess of $3.2 million.

Terra operates a chemical plant in Severnside, Bristol, England, and produces fertilizer by reforming natural gas. Carbon dioxide is a byproduct of fertilizer production. Terra sold the carbon dioxide to Messer UK Limited (Messer), Hydrogas Limited, and BOC (collectively resellers). The resellers sold the carbon dioxide to beverage manufacturers. The beverage manufacturers then incorporated the carbon dioxide into carbonated beverages during their bottling and canning processes. The beverage manufacturers sold their products to wholesale and retail customers.

In May 1998, Terra was notified that benzene was discovered in a test sampling of a carbonated beverage. Terra investigated and discovered a leak in a C-114 Feed Preheater exchanger at the Severnside plant. The leak allowed natural gas containing benzene, a genotoxic carcinogen, to bypass the reforming process and to permeate the carbon dioxide. Before discovering the benzene leak, Terra had sold substantial quantities of carbon dioxide containing low levels of benzene to resellers who resold the carbon dioxide containing benzene to beverage manufacturers, who

3

incorporated the carbon dioxide into their carbonated beverages and sold the now contaminated beverages to wholesale and retail customers. Following notification of the benzene leak, scientific testing, and two days of extensive media attention, the beverage manufacturers initiated a trade recall to retrieve product from large wholesalers and large supermarket chains. Because the low benzene levels posed a negligible health risk to consumers, the beverage manufacturers decided against initiating a consumer recall, fearing such a recall would cause widespread panic.

### B.    Procedural Summary

After the trade recall, several beverage manufacturers sued Messer and Terra in England's Commercial Court, claiming breach of contract and breach of warranty for supplying carbon dioxide unsuitable for use in consumer beverages. The beverage manufacturers also brought tort claims in the same lawsuits directly against Terra. Messer filed third-party breach of contract and breach of warranty claims against Terra. Terra, in turn, promptly notified National Union.

At the time this appeal was filed, the High Court of Justice, Queen's Bench Division, Commercial Court, in London, England, had entered two judgments[3] against Messer and Terra, obligating Terra to indemnify the resellers for their liability to the beverage manufacturers. National Union, on behalf of Terra, satisfied the first judgment in the Britvic case, but refused to satisfy the second judgment in the Bicardi-Martini case, contending Terra sustained only economic loss, with no corresponding physical injury to property. Terra and Messer appealed the judgments, and the Supreme Court of Judicature Court of Appeal dismissed the appeals.

---

[3]Britvic Soft Drinks Ltd. and Bass Brewers Ltd. v. Messer UK Ltd. and Terra Nitrogen (UK) Ltd., (1999 Folio No. 841) [2002] 1 Lloyd's Rep. 20, 2001 WL 513121 (QBD) (Comm. Ct.) (May 9, 2001) (Britvic); Bicardi-Martini Ltd. v. Thomas Hardy Packaging Ltd. v. Messer UK Ltd. and Terra Nitrogen (UK) Ltd., (1999 Folio No. 1198) [2002] 1 Lloyd's Rep. 62, 2001 WL 1040274 (QBD) (Comm. Ct.) (July 12, 2001) (Bicardi-Martini).

Thereafter, National Union brought this declaratory judgment action in federal district court. Both National Union and Terra filed motions for summary judgment. The district court concluded the benzene contamination of Terra's carbon dioxide, which was later sold and incorporated into carbonated consumer beverages, constituted an "occurrence" under the policy. The district court further concluded the occurrence resulted in "property damage" when the integrated products were rendered unsuitable for human consumption, necessitating recall and destruction. The district court denied National Union's motion for summary judgment and granted Terra's motion for summary judgment. The district court ordered National Union to indemnify Terra for the judgment in the Bicardi-Martini case, to pay for Terra's defense of all benzene contamination claims, and to indemnify Terra against any judgment or settlement resulting from the benzene contamination.

## C. Issues on Appeal

On appeal, National Union argues the district court erred in holding National Union's duty to indemnify Terra was not determined in Bicardi-Martini, which awarded damages only for intangible economic loss. National Union further contends there was no property damage and, alternatively, no property damage was caused by an occurrence. Conversely, Terra argues its right to coverage under the policy is not controlled by the English Commercial Court's ruling that no "direct physical damage to property" occurred, because the policy at issue does not require "direct" injury. Terra further claims the English Commercial Court was never presented with the question of whether Terra's liability to third parties arose from "property damage," as defined by the policy and construed under American coverage law. Finally, Terra contends the benzene contaminated carbon dioxide altered the carbonated beverages of third parties, contaminating the consumer products and rendering them unsaleable, and thereby triggering an occurrence of property damage under the policy.

## II. DISCUSSION

### A. Standard of Review

We review de novo a district court's rulings on issues of law, including the application of collateral estoppel, In re Scarborough, 171 F.3d 638, 641 (8th Cir. 1999), and the interpretation of insurance policy contractual provisions, United Fire & Cas. Co. v. Fid. Title Ins. Co., 258 F.3d 714, 718 (8th Cir. 2001).

### B. Collateral Estoppel

Under Iowa law, collateral estoppel applies if (1) the issues in the current and prior actions are identical, (2) the issue was raised and actually litigated in the prior action, (3) the issue was material and relevant to the disposition of the prior action, and (4) the determination was necessary and essential to the prior judgment. See, Dolan v. State Farm Fire & Cas. Co., 573 N.W.2d 254, 256 (Iowa 1998) (issue preclusion). We agree with the district court that the English Commercial Court's interpretation of contractual liability clauses relied on a definition of "property damage" distinct and independent from the definition contained in National Union's policy. The issues are clearly not identical. Therefore, the district court properly determined collateral estoppel does not apply.

### C. Policy Interpretation

State law governs the interpretation of insurance policies. Capitol Indem. Corp. v. Haverfield, 218 F.3d 872, 875 (8th Cir. 2000). The "[c]onstruction of an insurance policy–the process of determining its legal effect–is a question of law for the court. Interpretation–the process of determining the meaning of words used–is also a question of law for the court unless it depends on extrinsic evidence or a choice among reasonable inferences to be drawn." Grinnell Mut. Reins. Co. v. Jungling, 654 N.W.2d 530, 536 (Iowa 2002) (quoting A.Y. McDonald Indus. v. Ins. Co. of N. Am., 475 N.W.2d 607, 618 (Iowa 1991)). The Iowa courts interpret an insurance policy from the "viewpoint of an ordinary person, not a specialist or expert." Id.

As the district court recognized, no Iowa case directly addresses whether a contaminated product sold to third-party manufacturers for incorporation into food or beverages triggers an "occurrence" resulting in "property damage," when the incorporation contaminates the finished food or beverage product and renders it unsuitable for human consumption.[4] We agree with the district court that Kartridge Pak Co. v. Travelers Indem. Co., 425 N.W.2d 687 (Iowa Ct. App. 1988), does not control in this instance. Kartridge Pak involved damage to an insured's own meat product caused by a defective deboner, id. at 689, as distinguished from this case which involves damages to third-party consumer beverages caused by incorporation of benzene contaminated carbon dioxide.

We have carefully reviewed the policy, briefs, record, and oral arguments, as well as the applicable case law. Most American courts interpreting the same or similar policy language under similar factual scenarios have found an "occurrence" resulting in "property damage." See Zurich Am. Ins. Co. v. Cutrale Citrus Juices USA, Inc., No. 5:00-CV-149-OC-10GRJ, 2002 WL 1433728, at *3 (M.D. Fla. Feb. 11, 2002) (holding "the adulteration of Cutrale's juice, which it sold to Tropicana, was an 'occurrence' . . . [that] resulted in 'property damage' which means 'physical injury to tangible property' when, and to the extent that, the adulterated juice was blended by Tropicana in the regular course of business with Tropicana's other juice products."); Chubb Ins. Co. of N. J. v. Hartford Fire Ins. Co., No. 97CIV.6935 LAP, 1999 WL 760206, at *8 (S.D.N.Y. Sep. 27, 1999) (concluding sales of adulterated apple juice to beverage manufacturers constituted "occurrences" causing property damage within meaning of comprehensive general liability policy); Gen. Mills, Inc. v. Gold Medal Ins. Co., 622 N.W.2d 147, 152 (Minn. Ct. App. 2001) (concluding "all

_____

[4]The Supreme Court of Iowa has determined "injury to the environment resulting from contamination by hazardous waste constitutes 'property damage' within the meaning of the CGL policies." A.Y. McDonald Indus., 475 N.W.2d at 624.

risk" policy insured food manufacturer who sustained direct physical loss or damage to its oat products resulting from independent contractor treating oats with FDA unapproved pesticide); Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc., 93 Cal. Rptr.2d 364, 376-77 (Cal. Ct. App. 2000) (holding presence of wood splinters in almonds caused "property damage" within meaning of commercial general liability policy when contaminated almonds were incorporated into nut clusters and cereal products). See also Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co., 314 N.E.2d 37, 39 (N.Y. 1974) (concluding coverage existed under products liability insurance policies for insured noodle manufacturer's liability to soup manufacturer who incorporated contaminated noodles into packaged soups and pasta products). Finding these cases persuasive, we conclude the incorporation of contaminated carbon dioxide into consumer beverages constituted an "occurrence" resulting in "property damage" within the meaning of the policy.

## III.  CONCLUSION

We conclude the district court thoroughly analyzed the issues and reached the correct conclusions. Accordingly, we affirm the district court's detailed and well-reasoned opinion and judgment. See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Terra Indus. Inc., 216 F. Supp.2d 899 (N.D. Iowa 2002). Heeding the advice of Robert Browning that "less is more," we stop here.

———————————————