UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

No. 96-1893

FIRST NATIONAL BANK,                    *
 of Olathe, Kansas,                           *
                                        *
     Plaintiff - Appellant,                        *
                                        *       Appeal from the United
       v.                               *       States District Court for
                                        *       the Southern District of
Iowa
THOMAS M. PONTOW;                       *
ANN M. PONTOW,                              *
                                        *
     Defendants - Appellees.               *

Submitted:  November 18, 1997

Filed:  April 17, 1997

Before BEAM, FRIEDMAN*, and LOKEN, Circuit Judges.

FRIEDMAN, Circuit Judge.

     A bankruptcy court rejected a bank's attempt to bar the discharge of
a bankrupt's indebtedness to the bank under § 523(a)(2)(B) of the
Bankruptcy Code.  The bankruptcy court held that the bank had not
established two conditions for denying discharge under that provision: that
the creditor had reasonably relied upon false information provided by the
debtor, and that the debtor had intended to deceive the bank.  The district
court affirmed, holding that the bankruptcy court's findings that the bank
did not establish reasonable reliance were not clearly erroneous.  We
affirm.

---

* DANIEL M. FRIEDMAN, of the United States Court of Appeals for the Federal
Circuit, sitting by designation.

I.

A.  In June 1991 the appellee, Pontow, purchased the majority of the
stock of Hal Hardin Apparel, Inc. ("Hardin Apparel"), a clothing
manufacturer.  Pontow financed the purchase through loans to Hardin Apparel
from the appellant First National Bank of Olathe ("the Bank"), which also
covered working capital for the business.  Initially, the Bank provided
$250,000 on an inventory term loan guaranteed by the Small Business
Administration ("SBA") and $250,000 on an accounts receivable line of
credit ("the A/R loan").  The A/R loan allowed Hardin Apparel to borrow the
lesser of $250,000 or eighty percent of eligible accounts receivable,
defined as those sixty days or less past due.  In October, 1991, the Bank
increased the A/R loan limit to $350,000 and in January, 1992 to $500,000,
both subject to the eighty percent limitation.

Hardin Apparel executed promissory notes to the Bank for the loans.
The notes and loans were secured by security arrangements covering all of
Hardin Apparel's assets.  Pontow personally guaranteed the foregoing debts
of Hardin Apparel.

Each time Hardin Apparel drew on the line of credit, it was required
to submit to the Bank a borrowing base certificate ("certificate").  This
was a printed one-page form which required Hardin Apparel to provide
specified information, including both eligible and ineligible accounts
receivable, the amount to be borrowed and comparisons with previous
certificates.  During the period the financing arrangements were operative,
Hardin Apparel submitted certificates to the Bank.  Hardin Apparel also
submitted with the certificates its balance sheet.

Upon receiving a certificate, a Bank clerk verified the calculations
to insure that the loan balance after the draw did not exceed eighty
percent of the accounts receivable shown on the certificate.  If the loan
sought met that standard and the certificate was properly completed, the
clerk issued a draw slip.  If the loan balance exceeded that percentage or
there were other problems, the clerk had to obtain a loan officer's

2

approval to do the draw slip.  In the majority of instances, the clerk issued the draw slip without obtaining loan officer approval.

Brian Roby ("Roby"), the loan officer responsible for the Hardin Apparel loan, on four separate occasions approved payments in excess of eighty percent of the accounts receivable shown on the certificate.  He did so based on "assurances" by Pontow that the loan balance would not exceed that limit for a significant length of time.  Roby also approved loans although the certificates did not reconcile the balance of accounts receivable with that shown on the previous certificate.  He also approved loans where the certificate included accounts receivable that were more than sixty days past due and where " on account items" were treated as "eligible accounts receivable," although he was aware that the deviations had the effect of overstating accounts receivable.

Unlike other documents relating to the loans, the Bank did not retain the certificates, either as part of the loan file or elsewhere.  Instead, it disposed of them shortly after the loans for which they were filed had been made.

When Hardin Apparel was unable to pay two notes due in May and June 1992, which covered part of the A/R loan, Roby extended the time for payment until July 1, 1992.  In granting the extensions, Roby thought that Hardin Apparel's accounts receivable balance was that shown on the certificate.  Roby doubted whether an extension would have been granted had he known then that accounts receivable were actually $100,000 less than what was represented on the certificates.

In June, 1992, Pontow and his accountant told Roby that Hardin Apparel needed an additional $200,000 loan to survive the fall 1992 season. Roby recommended to the bank's loan committee that it approve both the additional $200,000 loan, to be guaranteed by the SBA, and renewal of the $500,000 A/R loan.  The SBA, however, refused the guarantee.

Roby, realizing that Hardin Apparel would not survive the season without some infusion of money, resubmitted both requests to the loan committee, which approved them. When Roby submitted the request he was "generally" aware of Hardin Apparel's accounts receivable as represented on the certificates. The note covering the additional $200,000 was due on September 15, 1992 but was extended to April 1, 1993. When Roby extended the due date he was aware of and claimed to have relied upon the accounts receivable balance as stated in the certificates and the balance sheets for that time period.

In December 1992, Pontow and his accountant advised the Bank that Hardin Apparel would not survive the winter, unless it merged with another company and received another $200,000 loan. The Bank refused to lend any more money without a guarantee by the SBA, which the SBA refused to make. The Bank called the loans on February 4, 1993.

Shortly thereafter, the parties met to discuss liquidation of the collateral, and the accountant provided Roby with a balance sheet listing the accounts receivable at $318,272. Roby wanted to know why that amount was so much lower than the accounts receivable shown on recent certificates, but Pontow refused to explain the discrepancy.

What had occurred was that Hardin Apparel repeatedly had overstated its accounts receivable by (1) delaying the recording of payments received from those accounts, and (2) including in accounts receivable those that were between sixty to ninety days overdue, although under its agreement with the Bank eligible accounts receivable were limited to those no more than sixty days past due. These overstatements originally began because Hardin Apparel's bookkeeper and her clerk were too busy timely to record payments on accounts receivable. At some point Pontow instructed the clerk to exclude from accounts receivable only those ninety days or more past due. He told the clerk and the bookkeeper that the reason for doing that was to overstate accounts receivable so that Hardin Apparel would have sufficient cash flow.

4

The Bank's expert witness, an accountant, testified that from June 17, 1992 until December, 1992 (with the exception of the August 31, 1992 balance sheet), the certificates and balance sheets overstated Hardin Apparel's accounts receivable by at least $200,000.

B.  In October, 1993, Pontow filed in the United States Bankruptcy Court for the Southern District of Iowa a voluntary petition under Chapter 7 of the Bankruptcy Code.  The Bank filed a complaint in the bankruptcy court seeking, among other things, a determination that Pontow's obligation under his guaranty of Hardin Apparel's loans was not dischargeable under 11 U.S.C. § 523(a)(2)(B).  The amended complaint alleged that between April 1, 1992 and February 10, 1993 Pontow "induced" the Bank "to make, extend, renew, and make further advances on the loans" to Hardin Apparel by submitting to the Bank "statements that overstated the balance of Hal Hardin Apparel, Inc.'s accounts receivable," on which the Bank "reasonably relied and which were made or published by . . . Pontow with the intent to deceive, all within the meaning of 11 U.S.C. § 523(a)(2)(B)."

After an evidentiary hearing, the bankruptcy court[**] held that the Bank had not established that Pontow's indebtedness to it was not dischargeable.  Ruling from the bench, the bankruptcy court found that the certificates contained false statements "regarding the financial condition of the debtor or the debtor's business," but that the Bank had not relied upon those statements in extending the loans.  The court stated that "the certificates were in fact, just a means by which a request for money based on the line of credit would be accomplished."  The court further found that if the Bank had relied upon the statements in the certificates, "the reliance is not reasonable."  Finally, the bankruptcy court found that the Bank had not established that Pontow had made the false statements "with the intent to deceive" the Bank.

---

[**]The Honorable Lee M. Jackson, United States Bankruptcy Judge for the Southern District of Iowa.

On the Bank's appeal, the United States District Court for the Southern District of Iowa[***] affirmed.  The court held that the bankruptcy court's findings that the Bank had failed to prove that it had relied upon Hardin Apparel's financial statements and the certificates, and that any reliance the Bank placed upon them was unreasonable, were not clearly erroneous.  It stated that "[e]vidence supported the bankruptcy court's conclusion that the borrowing base certificates were merely a means to request funds be advanced under a line of credit."  The court ruled that because it "finds substantial evidence supports the bankruptcy court's decision that the Bank did not prove two essential elements in section 523(a)(2)(B)," it was unnecessary to decide whether the bankruptcy court correctly found that Pontow did not intend to deceive the Bank.

## II.

Section 523(a)(2)(B) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(B) (1994) provides that a discharge in bankruptcy does not cover any money indebtedness obtained by

> (B) use of a statement in writing--
>     (i) that is materially false;
>     (ii) respecting the debtor's or an insider's financial condition;
>     (iii) on which the creditor to whom the debtor is liable for such
>       money, property, services, or credit reasonably relied; and
>     (iv) that the debtor caused to be made or published with intent to
>       deceive.

To bar a discharge, the creditor must prove each of the foregoing elements by a preponderance of the evidence.  Grogan v. Garner, 498 U.S. 279, 286-7 (1991); Valley Nat'l Bank v. Bush (In re Bush), 696 F.2d 640, 644 n. 4 (8th Cir. 1983).

---

[***]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

Subsection (A) of this provision bars discharge of a money indebtedness obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." Subsection (A) does not require the creditor to prove the four elements of subsection (B).

Since subsection (B) covers only statements "respecting a debtor's . . . financial condition" and subsection (A) excludes such statements, the subdivisions "are . . . expressly mutually exclusive." Barclays Am./Bus. Credit, Inc. v. Long (In re Long), 774 F.2d 875, 877, n.1 (8th Cir. 1985).

In the bankruptcy court, the district court and this court the parties treated the case as involving subsection (B). Although Count III of the Bank's complaint in the bankruptcy court relied upon both subsections (A) and (B), it also stated that the false statements regarding Hardin Apparel's accounts receivables that Pontow submitted to the Bank "constitute materially false written statements respecting [Hardin Apparel's] financial condition . . . within the meaning of 11 U.S.C. § 523(a)(2)(B)." The stipulated facts to which the parties agreed included: "J. The statements made on the Borrowing Base Certificates concerning Hal Hardin Apparel's accounts receivable constitute statements respecting Hal Hardin Apparel's financial condition." The bankruptcy court, noting that the complaint was "focusing on 11 U.S.C. § 523(a)(2)(B)," referred to the stipulated fact quoted above and stated that "we have these statements in writing regarding the financial condition of the debtor or the debtor's business . . . ."

The district court quoted the language of subsection (B), noted that the bankruptcy court "received evidence relevant to the elements set out in § 523(a)(2)(B)," and concluded that "substantial evidence supports the bankruptcy court's decision that the Bank did not prove two essential elements in section 523(a)(2)(B)." In this court the parties' briefs discussed solely subsection (B). The question of the possible applicability of subsection (A) was raised by the court at oral argument, and the Bank did not believe it applicable.

7

We think it appropriate that we decide this case on the basis of the statutory provision that the parties, the bankruptcy court and the district court deemed applicable. The question of which provision applies turns on whether the certificates and financial statements Hardin Apparel submitted to the Bank were statements "respecting the debtor's or an insider's financial condition." Some courts have held that such statements are limited to balance sheets showing the debtor's net worth. See, e.g., Gehlhausen v. Olinger (In re Olinger), 160 B.R. 1004, 1009 (Bankr. S.D. Ind. 1993); Jokay Co. v. Mercado (In re Mercado), 144 B.R. 879, 885 (Bankr. C.D. Cal. 1992). Other courts have construed the phrase more broadly. In Engler v. Van Steinburg (In re Van Steinburg), 744 F.2d 1060, 1060-61 (4th Cir. 1984), the court said: "Congress did not speak in terms of financial statements. Instead it referred to a much broader class of statements -- those respecting a debtor's . . . financial condition." In In re Long, this court stated that an allegation that the bankrupt "obtained excessive loans by misrepresenting the value of its inventory" is an allegation that "concerns the financial condition [of the debtor] and is thus governed by 11 U.S.C. § 523(a)(2)(B)." In re Long, 774 F.2d at 877 (footnote omitted). We cannot say that the treatment of this case by the bankruptcy and district courts as involving § 523(a)(2)(B) was such clear error that we should now consider and determine whether § 523(a)(2)(A) was the applicable provision.

## III.

The bankruptcy court, which saw and heard the witnesses, found that the Bank had not relied upon the misstatements in Hardin Apparel's certificates and balance sheets, that any such reliance would have been unreasonable, and that Pontow had not intended to deceive the Bank. The district court upheld the findings on the lack of reasonable reliance as not clearly erroneous, and therefore did not reach the lack of intent finding. We agree with the district court that the reasonable reliance findings are not clearly erroneous and therefore also do not reach the lack of intent issue.

In a proceeding to bar a discharge under § 523(a)(2)(B), "We utilize the same

8

standard of review as that of the district court." <u>Miller v. Farmers Home Admin.</u> <u>(In re Miller)</u>, 16 F.3d 240, 242 (8th Cir. 1994). "We review the bankruptcy court's legal conclusions de novo and its factual findings under the clearly erroneous standard." <u>Id.</u> at 242-3; <u>Jones v. Sinclair Oil Corp.</u> <u>(In re Jones)</u>, 31 F.3d 659, 661 (8th Cir. 1994). The determinations regarding lack of reasonable reliance are findings of fact. <u>Thul v. Ophaug</u> <u>(In re Ophaug)</u>, 827 F.2d 340, 341 (8th Cir. 1987) (stating that "we need not and do not reach the question of whether the Bankruptcy Court's finding of fact on the issue of reasonableness [of reliance] is clearly erroneous").

With respect to reliance, the district court correctly held that "[s]ubstantial evidence supports the bankruptcy court's finding that the Bank did not rely on the Hal Hardin financial statements and borrowing base certificates." The Bank made A/R loans despite Hardin Apparel's failure to supply all the financial information called for in the certificates. On four occasions, the Bank made loans even though the resulting indebtedness exceeded eighty percent of the accounts receivable. The Bank's discarding of the certificates shortly after they were submitted, instead of retaining them as part of the Bank's records covering the loans, strongly suggests that the Bank did not rely upon those documents in making the loans. As the district court concluded, "[e]vidence supported the bankruptcy court's conclusion that the borrowing base certificates were merely a means to request funds be advanced under a line of credit."

Indeed, it appears that the Bank made the additional $200,000 loan not because of reliance upon Hardin Apparel's reported accounts receivable, but because the Bank realized that without that loan the debtor would fail and jeopardize whatever chance the Bank had of recovering its loans. The bank loan sheet, prepared before the decision to renew the A/R loan, indicates that the Bank believed that Hardin Apparel's accounts receivables were significantly lower ($388,000) than the amount shown on the certificates covering the same period (more than $500,000).

The determination of the reasonableness of a creditor's reliance is to be made "`in

9

light of the totality of the circumstances.'  Coston v. Bank of Malvern (In re Coston), 991 F.2d 257, 261 (5th Cir. 1993) (en banc).  Among other things, a court may consider `whether there were any `red flags' that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.'  Id."  In re Jones, 31 F.3d at 662.

As the bankruptcy court found, there were a number of "red flags" that should have alerted the Bank to the possibility that the statements in the certificates were inaccurate and induced it to investigate the situation before extending credit, such as the debtor's failure to provide all the information called for in the certificates.  Moreover, the debtor's obvious financial problems, shown by its inability timely to pay two notes in May and June, 1992, the need for an additional $200,000 loan to enable the debtor to survive the fall 1992 season, and the SBA's refusal to guarantee that loan should have made the Bank question the accuracy of the financial information Hardin Apparel submitted to it.

To be sure, there was evidence in the record that would have permitted the bankruptcy court to reach the opposite conclusions from those it reached.  That, however, is not enough to make the bankruptcy court's findings clearly erroneous.  "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."  Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985).  We have concluded that the record supports the bankruptcy court's findings.  That is the end of our inquiry.

The judgement of the district court, affirming the bankruptcy court's determination that the debt is discharged, is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT