# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

No. 08-6032

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Todd Dewaine Freier, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| | * | Appeal from the United States |
| R & R Ready Mix, Inc., | * | Bankruptcy Court for the |
| | * | District of Minnesota |
| Plaintiff-Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Todd Dewaine Freier, | * | |
| | * | |
| Defendant-Appellant. | * | |
| | * | |

Submitted: February 6, 2009
Filed: March 20, 2009

Before FEDERMAN, MAHONEY, and VENTERS, Bankruptcy Judges

MAHONEY, Bankruptcy Judge.

## I. BACKGROUND

R & R Ready Mix, Inc. ("R & R") brought this action against Todd Dewaine Freier ("Freier") to obtain a determination that Freier had personal liability on a state court money judgment rendered in favor of R & R and against T. F. Concrete, Inc. ("T. F."), a corporation wholly owned by Freier. R & R requested the bankruptcy court pierce the corporate veil of T. F. and find that the liability of Freier to R & R is a non-dischargeable debt under 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(2)(B) and 11 U.S.C. § 523(a)(4). The bankruptcy court entered an order piercing the corporate veil, finding the debtor personally liable for the T. F. judgment, and finding the debt non-dischargeable under all three subsections of 11 U.S.C. § 523(a). We reverse.

## II. FACTS

Freier, the debtor, is the sole owner, shareholder, officer and employee of T. F., a company that performed concrete construction work. Freier operated T. F. seasonally from April through November, weather permitting. His participation in the construction activity was on a part-time basis because he was employed full-time as a machine operator with a company in Alexandria, Minnesota.

R & R is a supplier of concrete and was T. F.'s main supplier from 2003 through August 2005. R & R provided concrete and related services to T. F. on unsecured credit terms. Freier did not provide R & R with a guarantee or other written agreement that he would be personally liable for the debt of T. F.

In 2003 and 2004, T. F. did not timely pay all of the invoices from R & R, and in the fall of 2004, it owed R & R approximately $160,000.00.

2

At the end of the construction season in 2004, the president and collection manager of R & R met with Freier in an attempt to work out a payment schedule. The representatives of R & R were aware that T. F. was a corporation and that Freier had no personal liability for the debt.

During the meeting, Freier made it clear to the representatives of R & R that he believed T. F. could pay off the debt over time, but if the terms of repayment were too harsh, T. F. would be forced into bankruptcy.

At that time, Freier, on behalf of T. F., and the representatives of R & R came to an oral agreement with regard to the monthly installment payments T. F. should make, beginning in early 2005. However, T. F. defaulted immediately on the oral agreement. Freier refused R & R's request for a personal guarantee. R & R had not sought any security for the debt and, as the debt was accruing, did not place mechanic's liens on the jobs T. F. performed. R & R chose not to do so because it was a small business operating in a small town and the exercise of such collection methods would cause problems for T. F. and for R & R.

After the default, R & R sued T. F. in February of 2005. Freier was served as a representative of T. F., and he once again engaged in settlement discussions with the president of R & R. According to R & R's president, Freier claimed that he was not taking any money out of the corporation and intended to make certain that R & R got paid. In addition, as part of the settlement discussions, R & R asked for a corporate financial statement. Freier obtained a document entitled "Personal Financial Statement" and altered it to use as the corporate financial statement. The financial statement listed three secured creditors owed approximately $85,800.00, and listed no other liabilities, debts, or unpaid invoices to any other entity. It did not list the $160,000.00 debt to R & R. It showed total assets of approximately $96,000.00 and total liabilities of $85,800.00, leaving a theoretical net worth of approximately $10,000.00. It also listed no vehicles, equipment, or other hard assets. Instead, the

$96,000.00 was shown under the section of the financial statement entitled "Securities."

R & R's president and collection manager were immediately aware that the financial statement was not accurate. It did not include the debt to R & R, which would have indicated that T. F. was insolvent by approximately $150,000.00. The financial statement showed no profit or loss or cash flow projections, nor did it show historical information such as sources and uses of cash. The representatives of R & R did not inquire as to the obvious discrepancy and, thereafter, employed the services of their attorney to prepare a Settlement Agreement dated March 31, 2005, in which both parties acknowledged that T. F. owed $159,961.07 with interest and finance charges accruing from and after January 31, 2005. T. F. agreed to make various monthly and lump-sum payments, commencing with a $1,000.00 payment upon execution of the agreement.

The agreement provided that if T. F. did not make the required payments, R & R was entitled to a default judgment. In addition, the agreement provided that R & R would continue to supply concrete products to T. F. if T. F. was not in default and if T. F. kept the account for new purchases current.

The agreement was silent with regard to any restrictions placed upon officer draws and compensation or capital purchases, and the agreement did not require a personal guarantee from Freier.

T. F., from March 2005 through July 2005, paid $25,500.00 on the debt and paid for new materials through June. T. F. defaulted by August 2005 and on August 25, 2005, R & R sent T. F. a notice of default for failure to make the $7,000.00 payment due August 10, 2005, failure to make payment for materials supplied in July of $11,283.63, and failure to make payment for materials provided in August of $18,851.64.

On September 8, 2005, pursuant to the terms of the settlement agreement, judgment was entered against T. F. in the amount of $150,882.97. Freier was not a named defendant and no judgment was entered against him.

The bankruptcy court, accepting the version of events testified to by the president of R & R, found as a fact that during the discussions in February 2005, Freier represented to R & R's president that he was not taking any funds from T. F. for himself personally, thereby reassuring the plaintiff that he was doing everything he could to pay the outstanding debt. The court found that representation to be false. As support for such finding, the court referred to testimony that Freier, despite earlier agreeing to pay down the debt to R & R, nevertheless used corporate funds for personal purchases. Specifically,

> after promising in December, 2004, to make payments toward the outstanding debt, the defendant purchased a Yamaha snowmobile from RB Specialties in Alexandria, MN on January 5, 2005, by charging $3,774.94, for the snowmobile to T. F. Concrete's credit card accounts. During this time, Freier also completed the construction of a large detached garage/building at his residential property and paid for a portion of the costs of the construction with money and assets belonging to T. F. Concrete, Inc. He paid for the cost of the concrete using corporate money, and purchased materials for the project from Western Lumber.

(App. at 000016.) The court found that the plaintiff relied upon the representation by Freier that he was not paying himself, believing R & R would be paid, particularly because of the method that Freier said he used in bidding jobs and in light of the corporate financial statement. The court further found that the financial statement was "false" because it understated the liabilities of T. F.

Finally, as support for a finding that the corporate veil should be pierced, the court found that after the judgment was entered against T. F. on September 8, 2005,

Freier caused T. F. to purchase a new 2006 Chevrolet pickup for $40,000.00, by trading in a 2003 Chevrolet crew cab pickup plus $5,000.00 cash. At the same time, T. F. continued to own a 2004 Chevrolet pickup. As additional support for its finding that the corporate veil should be pierced, the court found that between March 31, 2005, the date of the Settlement Agreement, and September 16, 2005, Freier paid himself $27,250.00 cash from T. F. accounts. He also used corporate funds to pay some personal expenses.

## III.  STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo.  First Nat'l Bank of Olathe v. Pontow (In re Pontow), 111 F.3d 604, 609 (8th Cir. 1997); Sholdan v. Dietz (In re Sholdan), 108 F.3d 886, 888 (8th Cir. 1997); Fed. R. Bankr. P. 8013.

Factual findings under 11 U.S.C. § 523(a)(2)(A) are reviewed for clear error. Lindau v. Nelson (In re Nelson) 357 B.R. 508, 512 (B.A.P. 8th Cir. 2006). A finding is clearly erroneous if, after examining the entire record, we are left with a definite and firm conviction that the bankruptcy court has made a mistake. Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. Anderson, 470 U.S. at 574.

Determination of reasonable reliance for purposes of § 523(a)(2)(B) is a finding of fact reviewed for clear error. Guess v. Keim (In re Keim), 236 B.R. 400, 402 (B.A.P. 8th Cir. 1999). Similarly, whether the debtor made or published a false financial statement with intent to deceive is reviewed for clear error. Sinclair Oil Corp. v. Jones (In re Jones), 31 F.3d 659, 661-62 (8th Cir. 1994).

6

The determination whether a relationship is a fiduciary relationship within the meaning of § 523(a)(4) is a question of law reviewable de novo. Tudor Oaks Ltd. P'ship v. Cochrane (In re Cochrane), 124 F.3d 978, 984 (8th Cir. 1997).

## IV. DISCUSSION

For purposes of our analysis here, we will ignore, for the moment, the need to pierce the corporate veil in order to make Freier personally liable for the debt, and will assume that Freier incurred the debt in his personal capacity.

### A. 11 U.S.C. § 523(a)(2)(A)

To obtain a determination that a debt should be excepted from discharge for money obtained by a debtor's false pretenses, false representation or actual fraud, other than a statement respecting the debtor's or insider's financial condition, a creditor must prove:

1. the debtor made a false representation;
2. the debtor knew at the time that the representation was false;
3. the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving a creditor;
4. the creditor justifiably relied on such representation; and
5. the creditor sustained alleged losses and damages as a proximate result.

Thul v. Ophaug (In re Ophaug), 827 F.2d 340 (8th Cir. 1987); see also Field v. Mans, 516 U.S. 59 (1995).

Applying the statutory standards of 11 U.S.C. § 523(a)(2)(A), then, the fraudulent conduct complained of must be actual fraud and not fraud implied by reckless conduct. See Am. Title Ins. Co. v. Gramolino (In re Gramolino), 183 B.R.

7

565, 567-568 (Bankr. E.D. Mo. 1995) (citing Ophaug, 827 F.2d at 342 n.1). Actual fraud is "something said, done, or omitted with the design of perpetrating what is known to be a cheat or deception." Merchants Nat'l Bank of Winona v. Moen (In re Moen), 238 B.R. 785, 790-91 (B.A.P. 8th Cir. 1999) (citations omitted).

Even if a false statement is made, no fraud exists unless the maker knows the statement is false at the time the statement is made. Nelson, 357 B.R. at 513. A promise to pay a debt in the future is not a misrepresentation merely because the debtor fails to do so; the creditor must prove that the debtor, when he said he would pay the debt, had no intention of doing so. Clauss v. Church (In re Church), 328 B.R. 544, 547 (B.A.P. 8th Cir. 2005).

The bankruptcy court found that Freier's statement during negotiations in December 2004 that he was taking no draws from T. F. was an intentional misrepresentation of a material fact made to induce R & R to forbear collection efforts and to continue to supply T. F. with concrete product and services on credit. The court further found that R & R relied a great deal on that representation because of the method that T. F. (or Freier) used to bid jobs. "Without taking any profit on the jobs, there should have been enough proceeds to pay for the materials used and to make payments on old debt owed to the plaintiff." (App. at 000021.) The court made a factual finding that Freier, with the intent to induce R & R to refrain from collection efforts and to continue supplying concrete, made a false representation that he was not taking funds from the corporation.

Those findings are clearly erroneous. The evidence does not support a finding that Freier did not intend to pay the debt at the time he made the statement that he was not taking anything from the business. He complied with the Settlement Agreement in April, May and June and made a partial payment in July, reducing the debt by thousands of dollars and keeping current on the payments for new materials. Those payments are inconsistent with a finding of no intent to pay the debt.

8

The factual finding that R & R justifiably relied on such representation is also clearly erroneous. The court found that if Freier was not drawing funds from the corporation and the corporation was bidding jobs in the manner testified to by Freier, R & R could have reasonably determined that there should have been enough proceeds to pay for the materials used and to make payments on the old debt. By the time that statement was made and that conclusion was reached by the representatives of R & R, T. F. was $160,000.00 in debt to R & R. If it were true that Freier was not withdrawing funds from the corporation and that the bidding procedure used by T. F. allowed sufficient proceeds to make the payments, T. F. would have been able to make the payments for the year prior to the time the misrepresentation was made. R & R made no effort to verify the bid procedure or to review any books or records of T. F. to determine what happened to contract proceeds, the use of which caused the debt to R & R.

Justifiable reliance is a minimal standard and does not require the creditor to conduct an investigation, even if the failure to investigate would be considered negligent and the falsity of the representation would be readily discoverable upon an investigation. Field v. Mans, 516 U.S. at 70-71. Nonetheless, the creditor may not "blindly rel[y] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." Id. at 71.

There is nothing in the record to support a finding of justifiable reliance on the misrepresentation. In contrast, the representatives of R & R testified that, at the time of their negotiations in December 2004 and in February 2005, they were aware, because they had been told by Freier, that if they did not continue to supply T. F., or demanded harsh terms for repayment, a bankruptcy would be filed and they would have no ability to collect anything on the outstanding debt.

For these reasons, the finding of non-dischargeability under 11 U.S.C. § 523(a)(2)(A) was clearly erroneous.

B.      11 U.S.C. § 523(a)(2)(B)

To obtain a determination that a debt is non-dischargeable under 11 U.S.C. § 523(a)(2)(B), a creditor must establish that the debtor obtained the extension, renewal or refinance of the credit by (1) use of a statement in writing that was materially false; (2) that pertained to his or his business's financial condition; (3) on which the plaintiff reasonably relied; and (4) that the debtor made with the intent to deceive the plaintiff. Jacobus v. Binns (In re Binns), 328 B.R. 126, 129 (B.A.P. 8th Cir. 2005).

Reasonable reliance is determined by looking at the totality of the circumstances. Pontow, 111 F.3d at 610; Keim, 236 B.R. at 402. The court may consider if there were any "red flags" that would have alerted the creditor to the possibility that the financial statement was not accurate and whether minimal investigation would have revealed the inaccuracy. Pontow, 111 F.3d at 610 (citing Coston v. Bank of Malvern (In re Coston), 991 F.2d 257, 261 (5th Cir. 1993) (en banc)).

The court's finding that R & R reasonably relied upon the accuracy of the financial statement – "[a]gain, because of the method that the defendant used to bid jobs, without debt owing other creditors there would be enough to pay for the materials used and to make payments on old debt owed to the plaintiff," (App. at 000022) – was clearly erroneous. The so-called corporate financial statement was obviously deficient. It reflected no debt to R & R, even though the outstanding debt was $160,000.00 at the time the financial statement was provided. The representatives of R & R knew that the financial statement was not accurate in that respect. They knew that T. F. was insolvent, at least to the extent of $150,000.00. They did not

10

question what constituted the assets of the corporation. The financial statement said there was $96,000.00 in securities. It mentioned nothing about hard assets that would be used in the concrete business. The financial statement said there were no security agreements, but listed GMAC as a secured creditor. The representatives requested no information about cash flow. Rather than relying on the financial statement, they relied upon their conclusion that failure to come up with an agreeable repayment plan would result in a bankruptcy and no collection whatsoever.

As mentioned above, the financial statement was inaccurate on its face in numerous areas and the representatives of R & R knew it. Any reliance they placed upon the financial statement was unreasonable. The finding of non-dischargeability under 11 U.S.C. § 523(a)(2)(B) was clearly erroneous.

C.    11 U.S.C. § 523(a)(4)

The bankruptcy court also found that the debt was non-dischargeable under 11 U.S.C. § 523(a)(4). To do so, it had to find that an express trust existed, that a fiduciary relationship existed between Freier and R & R, and that Freier committed fraud or defalcation in the course of that fiduciary relationship. Jafarpour v. Shahrokhi (In re Shahrokhi), 266 B.R. 702, 707 (B.A.P. 8th Cir. 2001).

The definition of "fiduciary" for purposes of § 523(a)(4) is a question of federal law. Cochrane, 124 F.3d at 984 (8th Cir. 1997). The term "fiduciary" is used in a strict and narrow sense and is limited to situations involving express or technical trusts. Hunter v. Philpott, 373 F.3d 873, 875-76 (8th Cir. 2004); Cochrane, 124 F.3d at 984; Barclays Am./Bus. Credit, Inc. v. Long (In re Long), 774 F.2d 875, 878 (8th Cir. 1985).

11

The court found that the fiduciary relationship between Freier and R & R resulted from the terms of a Minnesota statute, a portion of which was quoted in the opinion:

> Minnesota statute § 514.02 subd. 1(a) reads in relevant part:
>
>> . . . (a) Proceeds of payments received by a person contributing to an improvement to real estate . . . shall be held in trust by that person for the benefit of those persons who furnished the labor, skill, material, or machinery contributing to the improvement . . . [.]

(App. at 000023.)

The court concluded, "The failure to pay the plaintiff out of proceeds received for materials furnished violated the statute and is a nondischargeable debt as a breach of fiduciary duty under 11 U.S.C. § 523(a)(4)." Id.

The bankruptcy court's finding of a fiduciary status was based on its interpretation of a Minnesota statute. A determination that a fiduciary relationship exists is a legal determination. Interpretation of a statute is a question of law which we review de novo. CIT Group/Equip. Fin., Inc. (In re M & S Grading, Inc.), 457 F.3d 898, 899 (8th Cir. 2006).

A review of the complete statutory subsection relied upon by the court reveals an error in statutory interpretation. The complete language of the subdivision is as follows:

> 514.02. Nonpayment for improvement; penalties and remedies
>
> Subdivision 1. Proceeds of payments; acts constituting theft. (a) Proceeds of payments received by a person contributing to an

12

improvement to real estate within the meaning of section 514.01 shall be held in trust by that person for the benefit of those persons who furnished the labor, skill, material, or machinery contributing to the improvement. Proceeds of the payment are not subject to garnishment, execution, levy, or attachment. *Nothing contained in this subdivision shall* require money to be placed in a separate account and not commingled with other money of the person receiving payment or *create a fiduciary liability* or tort liability on the part of any person receiving payment or entitle any person to an award of punitive damages among persons contributing to an improvement to real estate under section 514.01 for a violation of this subdivision.

Minn. Stat. § 514.02 (emphasis added).

This statute specifically precludes the finding of a fiduciary relationship between the person contributing to an improvement to real estate and the person for whose benefit the proceeds were received.[1] In other words, Freier, acting on behalf of T. F., received payment and had an obligation to protect the interest of R & R, but neither Freier nor T. F. had a fiduciary liability to R & R.

## V.  PIERCING THE CORPORATE VEIL

The bankruptcy court found that it should pierce the corporate veil in order to determine that Freier had a personal responsibility for the judgment debt held by R & R against T. F. and that such debt would be non-dischargeable in Freier's bankruptcy case. Since we conclude that even if Freier had personal responsibility for the debt,

---

[1]This conclusion, based on the express language of the statute, is in contrast to recent cases from other jurisdictions interpreting their analogous statutes as creating an express trust and therefore a fiduciary relationship, see, e.g., ASCI Readi-Mix & Asphalt Specialties Co. v. Gamboa (In re Gamboa), ___ B.R. ___, 2008 WL 5568212 (Bankr. D. Colo. Dec. 16, 2008), and Fischer Constr., L.L.C. v. Ecker (In re Ecker), ___ B.R. ___, 2009 WL 210687 (Bankr. E.D. Wis. Jan. 27, 2009),

the determination of non-dischargeability is incorrect, we need not address the legal and factual issues pertaining to piercing the corporate veil.

## VI.  CONCLUSION

The order of the bankruptcy court is reversed, and the matter is remanded to the bankruptcy court for further proceedings consistent with this opinion.

———————————