In re Ricky W. PATTERSON, Debtor.

Mary D. Carter d/b/a Patterson House Moving and her attorney Michael D. Ray, Plaintiffs

Ricky W. Patterson, Defendant.

Bankruptcy No. 5:12–bk–11501.
Adversary No. 5:12–ap–01052.

United States Bankruptcy Court,
E.D. Arkansas,
Pine Bluff Division.

Jan. 24, 2013.

Michael D. Ray, Attorney at Law, Crossett, AR, for Plaintiffs.

Lyndsey D. Dilks, The Brad Hendricks Law Firm, Little Rock, AR, for Defendant.

## *OPINION*

RICHARD D. TAYLOR, Bankruptcy Judge.

On April 10, 2012, plaintiffs Mary D. Carter ("Carter") and her attorney, Michael D. Ray ("Ray"), filed a *Complaint and Objection to Discharge of Debt and Dischargeability of Debt* ("Objection"). The debtor, Ricky W. Patterson ("Patterson"), filed his *Answer to Complaint and to Objection to Discharge of Debt and Dischargability of Debt* ("Answer") on May 10, 2012. In the Objection, Carter and Ray seek a denial of discharge based on 11 U.S.C. § 727(a)(2) and a determination that debts owed to Carter resulting from a state court order are nondischargeable pursuant to 11 U.S.C. § 523(a)(2), (4), (6), and (19)(B). The parties tried this matter on December 6, 2012. For the reasons stated below, the discharge and dischargeability counts are denied.

### I. Jurisdiction

This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J). The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

### II. Findings of Fact

Carter presented evidence in three forms: (1) a state court order that Carter suggests should have a dispositive collateral estoppel effect; (2) direct testimony; and (3) documents admitted into evidence.

The first form represents the majority of the evidence introduced at trial.

Patterson started Patterson House Moving ("PHM") as a sole proprietorship in 1972. (Plaintiffs' Ex. 7 at 3.) In 2003, he met and began dating Carter, who was working for another home moving business, Ferrell House Moving ("FHM"). Shortly thereafter, the couple moved in together. During the course of their relationship, they began working together at PHM. (Plaintiffs' Ex. 4 at 2.) Eventually, Carter bought FHM from her employer. Patterson wanted to sell his business to her as well; she agreed, but they never reduced their agreement to writing. (Plaintiffs' Ex. 4 at 1–2.) Over the years, Carter paid Patterson approximately $40,000 for the business. Despite equivocating as to the existence of an agreement to buy him out, Patterson acknowledged the sale as recently as August 27, 2007. (Plaintiffs' Ex. 3 at 1.) Specifically, as part of his testimony in *Patterson v. Sanders*, No–CV–2004–291–2–5, Patterson stated, under oath, that "he had sold his business including the equipment which was the basis of this lawsuit to [Carter]." (Plaintiffs' Ex. 3 at 1.) [1]

While they worked together at PHM, Carter ran the crew and equipment. Patterson obtained the necessary permits, insurance, licenses, and surety bonds. He was the only one capable of obtaining the surety bonds, which are necessary to move homes, because of Carter's credit history. She testified, however, that Patterson gave her the impression that she could buy his bonds from him. Though Patterson handled the PHM paperwork, Carter provided

---

1. In this otherwise unrelated lawsuit, Patterson sued a third party for stealing PHM equipment. Judge Jodi Raines Dennis of the Circuit Court of Jefferson County dismissed the case with prejudice after finding that Patterson had no interest in the business or equipment. (Plaintiffs' Ex. 3 at 1.)

the money to pay for the permits, insurance, licenses, and bonds.

Patterson set up a checking account in Carter's name in December of 2007. (Plaintiffs' Ex. 4 at 2.) The address listed on the account is hers. (Plaintiffs' Ex. 1 at 1.) Patterson was authorized to withdraw money from the account. He also deposited money into it. This money came from moving homes and Patterson's Social Security checks.[2] (Plaintiffs' Ex. 7 at 10.) Since 2007, tax returns for PHM were filed in Carter's name as sole proprietor. (Plaintiffs' Ex. 8 at 7.)

Carter and Patterson worked together at PHM from 2003 until January of 2010 when their personal relationship ended. (Plaintiffs' Ex. 4 at 5.) Thereafter, a disagreement arose regarding the ownership of PHM, and Patterson began harassing Carter. (Plaintiffs' Ex. 8 at 3.) Carter obtained an Order of Protection against Patterson on February 10, 2010. (Plaintiffs' Ex. 8 at 3.) On March 9, 2010, Patterson attempted to have the Order of Protection set aside so he could retrieve his property from Carter's home, but instead of setting it aside, the state court extended the Order of Protection for an additional six months. (Plaintiffs' Ex. 5 at 1.) According to Carter, even after the Order of Protection became effective, Patterson went to her home and removed the majority of the PHM equipment. As a result, she has been unable to move homes.

Patterson used the PHM equipment he removed from Carter's property to continue moving homes. He moved two homes after their relationship ended and received $11,000 for the work. (Plaintiffs' Ex. 8 at 8.) He also procured house moving permits that were issued in PHM's name after his personal and professional relationship with

Carter ended. (Plaintiffs' Ex. 2 at 1.)[3] Additionally, he removed the remaining balance from the PHM bank account that he had set up in Carter's name. According to his testimony, before closing the account, he withdrew approximately $700 to pay for insurance on the equipment for 2011. This amount, however, was not enough to cover the total insurance premium payment. He personally paid $5,000 to cover the premium payment for the surety bond for a full term. (Plaintiffs' Ex. 6 at 1.)

On March 22, 2010, Carter filed a complaint in the Ashley County Circuit Court. (Defendant's Ex. A at 1.) The first count of the complaint alleged that Patterson converted, seized, and misappropriated a list of specifically enumerated equipment. The second count asserted that Patterson breached his fiduciary duty by misappropriating $1,100 from the PHM bank account. Carter requested that the court place a constructive trust on any money remaining in the PHM bank account as well as enjoin Patterson from spending or disposing of the removed funds. Next, Carter alleged that Patterson's seizure of PHM equipment and vehicles prevented her from "being able to continue to work and make a living." (Defendant's Ex. A at 4.) As a result, the third count asked the court to order immediate delivery of the equipment and to approve an injunction that would prevent Patterson from "selling, using, leasing, lending, disposing of, or taking any action that would diminish the value of the PHM equipment and vehicles." (Defendant's Ex. A at 4.) The fourth count requested an accounting of all profits or income obtained through the use or sale of any PHM equipment. The fifth count alleged that Patterson breached the

---

**2.** Patterson has been on disability since 2001.

**3.** These permits were issued on June 24, 2010; September 21, 2010; January 6, 2011; and March 21, 2011. (Plaintiffs' Ex. 2 at 1.)

agreement that transferred ownership of PHM to Carter. The sixth count asserted that Patterson's conduct caused her lost business opportunities and income. The final count alleged that Patterson knew or should have known his conduct would result in damage to Carter and "continued such conduct with malice or reckless disregard of the consequences from which malice may be inferred." (Defendant's Ex. A at 5.) Thus, Carter claimed she was entitled to an award of punitive damages. Additionally, Carter prayed for compensatory and punitive damages for injury resulting from Patterson's breach of their agreement and unjust enrichment as well as costs and attorney's fees. (Defendant's Ex. A at 6.)

In his answer, Patterson argued that "no formal agreement [had] been reached which would affect the ownership of Patterson House Moving," and he claimed to still be the sole owner of the business. (Plaintiffs' Ex. 4 at 1.) He denied all of the allegations raised in Carter's complaint and filed a counterclaim alleging that she fraudulently or deceptively converted his property as well as that of PHM into her name without authorization; refused to return his property; misappropriated funds and property that she was entrusted with as an employee of PHM; and breached her fiduciary duties as an employee or agent of PHM. (Plaintiffs' Ex. 4 at 6.) He requested that the court dismiss the complaint against him and that he be reimbursed for all damages, costs, and attorney's fees. (Plaintiffs' Ex. 4 at 6.)

Judge B. Kenneth Johnson held a trial on the complaint and answer on May 31, 2011. (Plaintiffs' Ex. 8 at 1.) Judge John-son entered a *Final Order* ("Order") on December 8, 2011.[4] Based on the testimony and evidence presented at trial, Judge Johnson determined that Carter was the owner of PHM "including all equipment, vehicles, beams, bolsters, dollies, trailers and tools associated therewith." (Plaintiffs' Ex. 8 at 8.) He made this determination based on Patterson's pertinent testimony concerning the sale of the business and ownership of the equipment in the otherwise unrelated *Patterson v. Sanders* case. (Plaintiffs' Ex. 8 at 6, and footnote 1 above.)

The Order held that Carter was entitled to an award of all property and equipment owned by PHM. (Plaintiffs' Ex. 8 at 9.) This entitled her to immediate possession of said items. (Plaintiffs' Ex. 8 at 9.) The Order also granted Carter assistance from local and state law enforcement to recover the property. (Plaintiffs' Ex. 8 at 10.) Patterson was ordered to immediately turn over all PHM property and assist in locating property not in his possession. (Plaintiffs' Ex. 8 at 10.) For items he could not produce, the Order required him to submit an itemized list with an explanation of why he could not produce the property. (Plaintiffs' Ex. 8 at 10.) Additionally, he was required to return the $700 he removed from the PHM bank account,[5] the $11,000 he earned through the use of PHM equipment, and $5,000 for Carter's attorney's fees. (Plaintiffs' Ex. 8 at 10.) The Order included a judgment solely for these three amounts. No judgment was entered liquidating a sum certain with respect to the equipment, either in the state court litigation or before this court. Failure to comply with the Order would consti-

---

4. An *Amended Final Order* was entered on February 9, 2012. It is identical to the Order except for the treatment of certain real property not relevant to this adversary proceeding. See Plaintiffs' Ex. 10 at 9.

5. Though the Order states that Patterson removed $700, the actual remaining balance in the account was $785.51. (Plaintiffs' Ex. 1 at 1.)

tute contempt. (Plaintiffs' Ex. 8 at 10.) The Order concluded by giving Patterson forty-five days to comply and enjoining him from harassing Carter or trespassing on her property for any reason. (Plaintiffs' Ex. 8 at 12.)

The Order also included the following language:

> In conclusion, the Court finds [that Patterson] has provided false testimony during these proceedings. He has engaged in conduct to defraud the Social Security Administration. [Patterson] has lied to, deceived and manipulated [Carter] for the better part of the last seven (7) years by virtue of his declarations and statements (many of them by virtue of sworn testimony given under oath) that she had purchased his business, equipment, and vehicles for which he had received by his own testimony some $40,000 in return for same. These statements and promises were obviously relied upon by [Carter] from her actions and conduct and which said reliance has just as obviously been to her detriment. Mr. Patterson has misappropriated the equipment, vehicles, tools, dollies, bolsters, beams and trailers and his actions have been deliberate.

(Plaintiffs' Ex. 8 at 11.) This language does not identify a pled cause of action (the complaint does not allege fraud). Further, the state court did not enter a judgment for the $40,000 amount associated with Carter's purchase of PHM.

After entry of the Order, Carter unsuccessfully attempted to collect the equipment and funds from Patterson despite the Order's requirement that he deliver all PHM property to her. Eventually, Carter filed a *Motion for Final Order and Motion for Contempt* ("Motion for Contempt") in an effort to collect. (Plaintiffs' Ex. 12.) A contempt hearing was scheduled for March 14, 2012. (Plaintiffs' Ex. 13 at 2.) Patter-

son filed his Chapter 7 petition on March 13, 2012. On April 10, 2012, Carter filed a *Motion for Relief from Stay* to pursue her state remedies for the recovery of the PHM equipment and funds as well as attorney's fees. (Plaintiffs' Ex. 13 at 4.) Carter did not produce any evidence reflecting that a hearing was ever held on her Motion for Contempt. She also filed the Objection on April 10, 2012. (Plaintiffs' Ex. 14.)

### III. Discussion

The Objection alleges that Patterson should not receive a discharge under § 727(a)(2)(A). (Plaintiffs' Ex. 14 at 4.) The Objection further alleges that the debt incurred as a result of the Order should be rendered nondischargeable pursuant to § 523(a)(2), (4), (6), and (19)(B).

#### A. Section 727(a)(2)(A)

■ Pursuant to § 727(a)(2)(A), the court shall grant the debtor a discharge unless the debtor, with intent to hinder, delay, or defraud a creditor, has transferred, removed, destroyed, mutilated, or concealed property of the debtor within one year before the petition was filed. "To succeed on a § 727(a)(2)(A) claim, the objecting creditor must prove by a preponderance of the evidence: (1) that the act complained of was done within one year prior to the date of petition filing; (2) the act was that of the debtor; (3) it consisted of a transfer, removal, destruction or concealment of the debtor's property; and (4) it was done with an intent to hinder, delay, or defraud a creditor." *Korte v. U.S. Internal Revenue Serv. (In re Korte)*, 262 B.R. 464, 472 (8th Cir. BAP 2001) (citing *Kaler v. Craig (In re Craig)*, 195 B.R. 443, 448 (Bankr.D.N.D.1996)).

■ The Order specifically states that "Mary Carter is the owner of Patterson House Moving including all equipment, vehicles, beams, bolsters, dollies, trailers and

tools associated therewith.... Pursuant to the Finding[s] in [*Patterson v. Sanders*], Ricky Patterson has no interest in any of this property." (Plaintiffs' Ex. 8 at 8.) Based upon the state court Order, Patterson had no legal or equitable interest in the missing PHM property. Though he may have misappropriated the property from Carter, it was not his property; therefore, § 727(a)(2)(A) does not apply or prevent Patterson from receiving a discharge.

## B. Collateral Estoppel and Dischargeability Issues

■ Carter introduced the Order as a substantial part of her proof, arguing its contributory or dispositive collateral estoppel effect on the factual issues raised in her Objection. The doctrine of collateral estoppel precludes a court from conducting further proceedings on issues that have already been litigated. *Fischer v. Scarborough (In re Scarborough)*, 171 F.3d 638, 641 (8th Cir.1999). Thus, the doctrine of collateral estoppel would prevent this court from relitigating certain issues on which the state court has already ruled. In determining whether the Order has preclusive effect, this court must apply Arkansas law. See *Scarborough*, 171 F.3d at 641. In Arkansas, the party invoking the doctrine of collateral estoppel must establish:

> (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) that issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment.

*Dodson v. Univ. of Ark. for Med. Sci.*, 601 F.3d 750, 761 (8th Cir.2010) (citing *Powell v. Lane*, 375 Ark. 178, 289 S.W.3d 440, 444 (2008)). The doctrine of collateral estoppel

cannot, to Carter's satisfaction, be dispositively applied to the issues raised by her in the Objection regarding the dischargeability of the debts owed to her.

■ First, Carter argues that the debts are nondischargeable based on § 523(a)(2), which exempts from discharge any debts incurred as a result of false pretenses, false representations, or actual fraud. The state court complaint, however, did not include fraud or false pretenses as a cause of action; thus, the parties did not litigate this issue in the state court proceeding.

■ Assuming arguendo that fraud was tried before the state court, Carter would interpose the following language from the Order in support of her collateral estoppel argument:

> In conclusion, the Court finds [that Patterson] has provided false testimony during these proceedings. He has engaged in conduct to defraud the Social Security Administration. [Patterson] has lied to, deceived and manipulated [Carter] for the better part of the last seven (7) years by virtue of his declarations and statements (many of them by virtue of sworn testimony given under oath) that she had purchased his business, equipment, and vehicles for which he had received by his own testimony some $40,000 in return for same. These statements and promises were obviously relied upon by [Carter] from her actions and conduct and which said reliance has just as obviously been to her detriment. Mr. Patterson has misappropriated the equipment, vehicles, tools, dollies, bolsters, beams and trailers and his actions have been deliberate.

(Plaintiffs' Ex. 8 at 11.)

Carter's reliance on this section would be misplaced. The language in the Order lacks clarity in the context of the alleged nondischargeability causes of action. At

best, the language suggests that Carter had been "deceived and manipulated" over a seven-year period concerning the purchase of the business for which she paid $40,000. But, as previously stated, the Order does not contain a judgment for this amount. The "statements and promises" upon which Carter relied to her detriment seem to relate to the purchase of the business and the $40,000 purchase price. Only a generous reading of this language would translate to a conclusive finding, solely on a collateral estoppel basis, that Patterson had engaged in fraudulent conduct sufficient to satisfy the elements of § 523(a)(2) with respect to the $11,000 judgment. The findings actually related to the equipment and the $11,000 judgment are found in the last part of the quoted language, which states that Patterson had "misappropriated the equipment...." (Plaintiffs' Ex. 8 at 11.) Misappropriation standing alone is not sufficient to apply § 523(a)(2) on a collateral estoppel basis. Further, the Order does not address or satisfactorily categorize the $700 amount in a clear manner sufficient to conclusively impose collateral estoppel in a nondischargeability context.

■■■■ Second, Carter argues that the debts are nondischargeable pursuant to § 523(a)(4), which bars the discharge of debts incurred as a result of fraud or defalcation while acting in a fiduciary capacity. Though the state court complaint did raise breach of fiduciary duty as a cause of action, the Order makes no determination as to whether a breach of fiduciary duty occurred. In fact, the Order does not even mention fiduciary duty. Consequently, the issue of whether Patterson breached his fiduciary duty was never determined by a "valid and final judgment." Furthermore, the question of what constitutes a fiduciary relationship within the meaning of § 523(a)(4) is a question of federal, not state, law. *R & R Ready Mix,*

*Inc. v. Freier (In re Freier),* 402 B.R. 891, 899 (8th Cir. BAP 2009), *rev'd on other grounds,* 604 F.3d 583 (8th Cir.2010). Therefore, even a final determination that Patterson breached his fiduciary duty would not necessarily equate to a final determination that he breached the fiduciary duty contemplated under § 523(a)(4).

■■■■ Third, Carter argues that the debts are nondischargeable pursuant to § 523(a)(6), which bars the discharge of debts for willful and malicious injury by the debtor to another entity or that entity's property. The state court complaint alleged that Patterson acted "with malice or reckless disregard of the consequences from which malice may be inferred." (Defendant's Ex. A at 5.) However, to establish the nondischargeability of a debt under this section, a creditor must prove that the conduct complained of is both willful and malicious. *Blocker v. Patch (In re Patch),* 526 F.3d 1176, 1180 (8th Cir.2008) (citing *Scarborough,* 171 F.3d at 641). Debts that result from "recklessly ... inflicted injuries do not fall within the compass of § 523(a)(6)." *Kawaauhau v. Geiger (In re Geiger),* 523 U.S. 57, 64, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). While the state court complaint alleged that Patterson acted with malice, it did not allege that he acted willfully. Thus, the parties did not litigate the issue of whether Patterson willfully and maliciously caused injury to Carter. Moreover, the Order makes no findings of willful or malicious conduct.

■■■■ Finally, Carter argues that the debts are nondischargeable under § 523(a)(19)(B), which exempts from discharge debts for securities violations that result before, on, or after the petition date from any order entered in federal or state judicial administrative proceedings. The complaint did not allege any securities violations, and this issue was not litigated in

state court. Therefore, the doctrine of collateral estoppel does not apply.

However, as stated above, the parties introduced some testimony and evidence at trial other than the Order. Accordingly, the court must independently examine each dischargeability issue raised in Carter's Objection on the basis of the testimony at trial complemented by any appropriate factual findings clearly stated in the Order.

### i. Section 523(a)(2)

■ The Objection does not specify whether Carter and Ray rely on subsection (A) or (B) of § 523(a)(2). However, the subsections "are mutually exclusive" as subsection (B) clearly applies only to written statements respecting a debtor's or insider's financial condition while subsection (A) excludes statements respecting a debtor's or insider's financial condition. *Nangle v. Lauer (In re Lauer)*, 371 F.3d 406, 413 (8th Cir.2004) (citing *First Nat'l Bank of Olathe v. Pontow*, 111 F.3d 604, 608 (8th Cir.1997)). Given that neither side introduced any evidence regarding Patterson's financial condition, subsection (B) does not apply.

■ To prevail under § 523(a)(2)(A), the creditor must prove, by a preponderance of the evidence, that the debtor obtained "money, property, services, or an extension, renewal, or refinancing of credit by false pretenses, a false representation, or actual fraud other than a statement respecting the debtor's or an insider's financial condition, upon which the creditor justifiably relied." *Grogan v. Garner*, 498 U.S. 279, 289, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Treadwell v. Glenstone Lodge, Inc. (In re Treadwell)*, 423 B.R. 309, 313–14 (8th Cir. BAP 2010), *rev'd on other grounds*, 637 F.3d 855 (8th Cir.2011). The Objection does not specify whether Patter-son obtained the $11,000 and $700 debt owed to Carter through false pretenses, false representations, or actual fraud. Thus, a discussion of all three is necessary.

■ A debt incurred as a result of an "implied misrepresentation or conduct intended to create and foster a false impression" is one obtained through false pretenses. *Leeb v. Guy (In re Guy)*, 101 B.R. 961, 978 (Bankr.N.D.Ind.1988). False pretenses include "a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or false and misleading understanding of a transaction, in which a creditor is wrongfully induced by the debtor to transfer property or extend credit to the debtor." *Quality Foods, Inc. v. Donckers (In re Donckers)*, Ch. 7 Case No. 5:05–bk–75192, Adv. No. 5:05–ap07158, slip op. at 13 (E.D.Ark. Apr. 26, 2006) (citing *Check Control, Inc. v. Anderson (In re Anderson)*, 181 B.R. 943, 950 (Bankr.D.Minn.1995)). A false representation has been made if: (1) the debtor made a representation; (2) he knew it to be false at the time he made it; (3) he subjectively intended to deceive the creditor at the time he made the representation; and (4) the creditor justifiably relied on the representation. *Fee v. Eccles (In re Eccles)*, 407 B.R. 338, 342 (8th Cir. BAP 2009). Actual fraud "consists of something said, done, or omitted by a person with the design of perpetuating what he knows to be a cheat or deception." *Merch. Nat'l Bank v. Moen (In re Moen)*, 238 B.R. 785, 790–91 (8th Cir. BAP 1999) (quoting *Stentz v. Stentz (In re Stentz)*, 197 B.R. 966, 981 (Bankr.D.Neb.1996)).

■ Patterson arguably received $40,000 from Carter through false pretenses, false representations, or actual

fraud.[6] Through his statements to her, Patterson led Carter to believe he sold PHM to her in exchange for $40,000 even though he claimed sole ownership of the business until the Order declared Carter the owner. However, Carter is not attempting to recover the $40,000 she paid for PHM or argue that the $40,000 is nondischargeable. Rather, she objects to the discharge of the $11,000 he earned through the use of PHM equipment; the $700 he removed from the PHM bank account; and the $5,000 in attorney's fees she accrued during the state court proceedings. Patterson did not incur any of these debts by deceiving Carter or misrepresenting facts. He incurred them by using her assets. Carter did not address the elements or satisfy her burden of proving the nondischargeability of those debts under § 523(a)(2)(A).

#### ii. Section 523(a)(4)

To establish a claim for relief under § 523(a)(4), a creditor must prove, by a preponderance of the evidence, "that a fiduciary relationship existed and that [the debtor] committed fraud or defalcation in the course of the fiduciary relationship." *Jafarpour v. Shahrokhi (In re Shahrokhi)*, 266 B.R. 702, 707 (8th Cir. BAP 2001) (citations omitted). As stated above, the definition of fiduciary for purposes of § 523(a)(4) is a question of federal law. Federal courts have narrowly defined the term to include only those trustees of "express trusts." See, e.g., *Freier*, 402 B.R. 891, 899 (8th Cir. BAP 2009). Based on this narrow definition, neither a constructive trust nor a relationship formed on "confidence, trust, and good faith" applies in the dischargeability context. *Hunter v. Philpott*, 373 F.3d 873,

876 (8th Cir.2004). However, courts should still "look to state law to determine whether a fiduciary [relationship] exists." *Yang v. Qin (In re Qin)*, 285 B.R. 292, 297 (Bankr.N.D.Iowa 2002). Under Arkansas law, a fiduciary relationship can be established in the absence of an express or technical trust for corporate officers by virtue of their positions. *Lewis v. Spivey (In re Spivey)*, 440 B.R. 539, 545 (Bankr. W.D.Ark.2010).

During the hearing on this matter, both Patterson and Carter testified that no trust existed. Though a corporate officer can be charged with the fiduciary duty contemplated by § 523(a)(4), even in the absence of an express trust, Patterson is not a corporate officer. Carter filed PHM's tax returns as a sole proprietor every year since 2007, and she testified that she is the sole proprietor of PHM during the hearing. Moreover, the Order stated that she is the sole owner of PHM. PHM has no other officers. Given that no express trust exists and Patterson is not an officer of PHM, no fiduciary relationship or duty exists for purposes of § 523(a)(4); thus, the court need not determine whether Patterson committed fraud or defalcation. Section 523(a)(4) does not prevent the discharge of the debts owed to Carter.

#### iii. Section 523(a)(6)

A creditor must prove, by a preponderance of the evidence, that she suffered a deliberate or intentional injury and that the injury was both "willful and malicious" to prevail under § 523(a)(6). *Patch*, 526 F.3d at 1180.

---

**6.** The Order stated, "[Patterson] has lied to, deceived and manipulated [Carter] for the better part of the last seven (7) years by virtue of his declarations and statements ... that she had purchased his business, equipment, and vehicles for which he had received by his own testimony some $40,000 in return for same." (Plaintiffs' Ex. 8 at 11.)

Willful injury includes instances where "the debtor [either] desires to bring about the consequences ... or knows that the consequences are certain, or substantially certain, to result from his conduct." *Sells v. Porter (In re Porter),* 539 F.3d 889, 894 (8th Cir.2008) (quoting *Patch,* 526 F.3d at 1180). There must be more than negligence or reckless disregard of the rights of others to show willful injury exists. *Prewett v. Iberg (In re Iberg),* 395 B.R. 83, 91 (Bankr. E.D.Ark.2008). Malicious injury is conduct "targeted at the creditor ... in the sense that the conduct is certain or almost certain to cause [financial] harm." *Scarborough,* 171 F.3d at 639. The debtor's knowledge that he is violating a creditor's legal rights is insufficient to establish malice without additional aggravated circumstances. *Johnson v. Logue (In re Logue),* 294 B.R. 59, 63 (8th Cir. BAP 2003) (citing *Barclays Am./Bus. Credit, Inc. v. Long (In re Long),* 774 F.2d 875, 881–82 (8th Cir.1985)).

■■■ Patterson intentionally used PHM property to move two homes, which resulted in payment of $11,000. He also intentionally withdrew $700 from the PHM bank account. His actions led to Carter missing the opportunity to earn $11,000 and prevented her from using the $700 for company business. It also resulted in the accrual of $5,000 in attorney's fees for her efforts to recover the missing property and funds. However, it is not enough to show that Patterson's conduct led to her injuries; Carter must prove by the preponderance of the evidence that Patterson intentionally or deliberately caused these injuries.

Carter presented no evidence that Patterson used her equipment to earn $11,000 with the deliberate intent of inflicting inju-

ry on her. She also presented no evidence that he withdrew the $700 to deliberately inflict injury on her. Patterson, however, introduced evidence that he withdrew the money to aid PHM. During the hearing, he stated that he used the $700 to pay PHM's insurance premium, and Carter offered no evidence to dispute this testimony. Moreover, Carter produced no evidence that she, through PHM, had the ability to pay for, service, and insure the equipment or bid and bond any jobs. In fact, the evidence overwhelmingly suggested otherwise. Due to the lack of evidence proving Patterson incurred the debts owed to Carter willfully or maliciously, Carter did not meet her burden of proof with regard to § 523(a)(6).

### iv. § 523(a)(19)(B)

Section 523(a)(19) provides as follows:

(a) A discharge ... does not discharge an individual debtor from any debt—

(19) that—

(A) is for—

(i) the violation of any of the Federal securities laws, ... any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or

(ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; *and*

(B) results, before, on, or after the date on which the petition was filed, from—

(i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;

(i) any settlement agreement entered into by the debtor; or

(iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor

2013 (emphasis added).

■ Section 523(a)(19) concerns debts for securities violations. The Objection only cites to subsection (B), but subsection (B) must be read in conjunction with subsection (A), as evidenced by the use of the word "and." Thus, for this section to apply, Carter must first prove that the debt is grounded in a securities violation. The Objection never alleged that a securities violation occurred. Therefore, § 523(a)(19)(B) is inapplicable in this case and does not prevent Patterson from receiving a discharge of the debts owed to Carter.

## IV. Conclusion

The relief requested in the Objection is denied. Patterson's prepetition debt to Carter is discharged. This ruling does not, however, relieve Patterson of his obligation to return the PHM equipment to Carter or prevent the state court from enforcing its orders by contempt or other appropriate sanctions.

IT IS SO ORDERED.

