# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 10-6040

_____

|  |  |  |
|---|---|---|
| In re: | * | |
| | * | |
| Chad R. Toftness, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| | * | |
| Gene W. Doeling, | * | |
| as Bankruptcy Trustee, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Coating Specialties, LLC; | * | District of Minnesota |
| Co-op Credit Union of Montevideo; | * | |
| Coating Specialties, Inc.; | * | |
| American Bank of St. Paul, | * | |
| | * | |
| Defendants, | * | |
| | * | |
| v. | * | |
| | * | |
| Chad R. Toftness, | * | |
| | * | |
| Defendant - Appellant. | * | |
| | * | |

_____

Submitted: November 4, 2010
Filed: November 29, 2010

_____

Before FEDERMAN, VENTERS, and SALADINO, Bankruptcy Judges.

_____

SALADINO, Bankruptcy Judge.

Chad R. Toftness appeals the judgment of the bankruptcy court[1] dated June 1, 2010, revoking the debtor-defendant's discharge pursuant to 11 U.S.C. § 727(d)(2). We have jurisdiction over this appeal from the final order of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons stated below, we affirm.

*STATEMENT OF THE CASE*

The trustee, Gene W. Doeling, brought this proceeding under 11 U.S.C. § 727(d)(2),[2] which provides:

> (d)  On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if –
> . . .
> (2)  the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee[.]

---

[1] The Honorable Dennis D. O'Brien, United States Bankruptcy Court for the District of Minnesota.

[2] Plaintiff also made claims against other defendants, but those were resolved by stipulation. Thus, the trial only concerned the trustee's action for revocation of discharge under § 727(d)(2).

In an action to revoke a discharge, the plaintiff must prove each element by a preponderance of the evidence. *O'Neal v. DePriest (In re DePriest)*, 414 B.R. 518, 521 (Bankr. W.D. Mo. 2009). Here, the bankruptcy court found that the trustee met his burden through both direct evidence and adverse inference. Specifically, the bankruptcy court found that at the time of bankruptcy and subsequently, Chad Toftness had an ownership interest in Coating Specialties, LLC, a Colorado limited liability company, and Coating Specialties, LLC, a Minnesota limited liability company. Further, the bankruptcy court found that Chad Toftness personally had an interest in certain promissory note payments flowing into a bank account of Chad Toftness and the limited liability companies. Thus, this action centers on Chad's involvement in the two limited liability companies and his interest in the note payments flowing through his bank account and the accounts of the limited liability companies, both pre- and post-bankruptcy.

Chad Toftness did not disclose his interests in the various companies or in the note payments. The bankruptcy court agreed with the trustee that Chad Toftness should have disclosed those interests and turned them over to the bankruptcy estate. Accordingly, the court found in favor of the trustee and revoked Chad's discharge.

## *STANDARD OF REVIEW*

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *First Nat'l Bank of Olathe v. Pontow (In re Pontow)*, 111 F.3d 604, 609 (8th Cir. 1997); *Sholdan v. Dietz (In re Sholdan)*, 108 F.3d 886, 888 (8th Cir. 1997); Fed. R. Bankr. P. 8013. We will overturn a factual finding only if it is not supported by substantial evidence in the record, if it is based on an erroneous view of the law, or if we are left with the definite and firm conviction that an error was made. *Richardson v. Sugg,* 448 R.3d 1046, 1052 (8th Cir. 2006). We afford due regard to the bankruptcy court's judgment of the credibility of the witnesses. Fed. R. Bankr. P. 8013; *Richardson v. Sugg,* 448 F.3d at 1052. A factual finding supported by

3

substantial evidence is not clearly erroneous. *Id.* Likewise, a trial court's choice between two permissible views of the evidence is not clearly erroneous. *Id.*

## *FACTUAL BACKGROUND*

The facts of this case are complicated and need not all be presented here. The most relevant facts are set forth in the following time line:

- Prior to 2000. Chad Toftness worked for Urethane Systems, a company owned by his father, Dennis Toftness.

- Approximately 2000.[3] Chad Toftness formed Coating Specialities, Inc., a Minnesota corporation, as the sole owner. The company was primarily involved in commercial painting and urethane coating of commercial properties in Minnesota and other states, including Colorado. Chad's mother, Connie Toftness, was the bookkeeper for Coating Specialties, Inc. and the Colorado and Minnesota LLCs referenced below.

- November 1, 2003. Setco Utility Company, Inc. ("Setco"), a Kentucky corporation, was dissolved. At that time, Chad Toftness was a vice president of Setco. At trial, Chad and Dennis Toftness both testified that Dennis Toftness was the sole, legal and equitable owner of Setco, but no corporate records were produced.

- October 31, 2005. Viking Energy, LLC ("Viking"), executed a promissory note in favor of Setco for $700,000.00.

---

[3]The date of formation of Coating Specialities, Inc. is not clear, although Chad Toftness testified that he formed his own company after he ceased working for his father in 2000.

4

- January 3, 2006. Viking made a note payment in the amount of $50,000.00 into Chad's personal bank account.

- July 2006. Viking paid $100,000.00 to Chad's personal bank account.

- October 2006. Coating Specialities, Inc. ceased doing business due to loan defaults and tax problems.

- November 3, 2006. Coating Specialities, LLC, a Colorado limited liability company ("Colorado LLC"), was formed. Michael McCarty was listed as the registered agent, though no records were produced to show who owned the membership interests.

- December 2006. The amount of $65,000.00 was paid by or on behalf of Viking to the Colorado LLC.

- January 2007. Chad Toftness negotiated contracts on behalf of Coating Specialties, LLC, a Minnesota limited liability company ("Minnesota LLC"), and signed as president and sometimes as vice president.

- February 2007. The sum of $10,000.00 was wired by or on behalf of Viking to the Colorado LLC.

- March 2007. The sum of $50,000.00 was wired by or on behalf of Viking to the Colorado LLC.

- April 1, 2007. Invoices were issued by the Minnesota LLC three days before it was officially formed, and for work already performed.

- April 4, 2007. The Minnesota LLC was formed. The Colorado LLC was dissolved shortly before the formation of the Minnesota LLC.

- May 3, 2007. The Minnesota LLC issued two checks totaling $10,000.00 to Kim Stark, Chad's girlfriend.

- May 4, 2007. Chad Toftness filed for relief under Chapter 7 of the Bankruptcy Code. He listed as assets his stock in Coating Specialties, Inc., which he valued as "$0.00." He did not list any ownership interest in the Colorado LLC, the Minnesota LLC, Setco, or the Viking promissory note payable to Setco.

- June 2007. The sum of $150,000.00 was paid by or on behalf of Viking to the Minnesota LLC.

- February 5, 2008. Chad Toftness received a Chapter 7 discharge.

- March 11, 2009. Trustee commenced an adversary proceeding to revoke Chad's discharge.

*DISCUSSION*

Pursuant to 11 U.S.C. § 727(d)(2), the discharge of a Chapter 7 debtor should be revoked if the debtor acquired property that is estate property and knowingly and fraudulently failed to report the acquisition of such property or to deliver such property to the trustee. The first step is to determine if the debtor acquired property of the estate.

The bankruptcy court found that the "Colorado and Minnesota LLCs were simply continuations of Coating Specialties Inc., in other forms, and that control of all three were (sic) always in the Toftness family, including Chad Toftness." The

6

bankruptcy court further found that the payments under the Viking note flowed to Chad Toftness personally and through the Minnesota and Colorado LLCs and that he had an interest in that note. Those are factual findings which are reviewed for clear error.

On the issue of ownership and control of the Colorado and Minnesota LLCs, the bankruptcy court, which had the opportunity to observe the witnesses and hear the testimony, found the testimony of Chad Toftness to be "not credible." Moreover, Chad and Dennis Toftness testified that Michael McCarty was the owner of the Colorado LLC. However, Mr. McCarty testified that he worked for the Colorado LLC and that it was created by the Toftness family. Connie Toftness, the spouse of Dennis Toftness and the bookkeeper for all of the companies, testified that the Colorado LLC belonged to both her and Dennis Toftness.

The bankruptcy court found that the Minnesota LLC was funded with assets and projects from Coating Specialties, Inc. and the Colorado LLC. The bankruptcy court further found that the testimony of Clint Lecy, who claimed to be the owner of the Minnesota LLC, was "completely incredible." Mr. Lecy had no investment in the company, no control over the books, and was paid a modest salary. All of the funding for the company came from the Toftness family. There was no credible evidence to the contrary. The bankruptcy court did not commit clear error in finding that the Colorado and Minnesota LLCs were simply continuations of Chad's company, Coating Specialties, Inc.

With regard to the Viking note proceeds, Chad Toftness testified that he had no interest in Setco, the dissolved Kentucky corporation, which was the beneficiary of the promissory note. However, the undisputed evidence is that the promissory note payments were made both pre- and post-petition to Chad Toftness and to the Colorado and Minnesota LLCs, entities the court found were controlled by Chad Toftness.

7

Chad and Dennis Toftness both testified that Dennis Toftness was the sole, legal and equitable owner of Setco and was entitled to the note proceeds. Further, the owner of Viking, the payor of the note, testified that he made the payments to whomever Dennis Toftness instructed, and Dennis Toftness instructed him to make the payments to the accounts of Chad Toftness and the LLCs. However, the bankruptcy court noted that the testimony of Dennis Toftness was contrary to sworn testimony he had presented in a different case. The evidence also revealed that Chad Toftness was allowed to use the money from those Viking payments for his own needs and the needs of his companies, as if it were his money. There is no documentation to establish that there was any loan or other agreement between Chad Toftness and his father with respect to such funds. In fact, neither testified to any specific loan arrangement other than simply asserting that the funds belonged to Dennis Toftness and he let Chad and the companies use some funds. Despite both being listed as officers of Setco, neither Chad Toftness nor Dennis Toftness produced any corporate records of Setco to establish ownership of the beneficial interests in that dissolved entity.

Based on the evidence that the funds flowed to Chad Toftness and/or to entities he controlled, and the lack of any credible evidence to the contrary, the bankruptcy court did not clearly err in finding that Chad Toftness had an interest in the proceeds of the Viking promissory note. Accordingly, the trustee has satisfied the first element – acquisition by the debtor of property of the estate.

The next and final element necessary to a cause of action under 11 U.S.C. § 727(d)(2) is whether the debtor knowingly and fraudulently failed to deliver property of the estate to the trustee. *Fokkena v. Klages (In re Klages),* 381 B.R. 550, 554 (B.A.P. 8th Cir. 2008). It is undisputed that Chad Toftness failed to deliver the note proceeds or any interests in or assets of the Colorado and Minnesota LLCs to the trustee. It is also undisputed that Chad Toftness "knowingly" failed to do so. In fact, Chad Toftness denied having any interest in the LLCs and the Viking note, testifying

8

that the Viking note payments belonged to his father and that he did not own any interest in the LLCs or their assets.

Thus, the ultimate question is whether the failure to deliver was done fraudulently.

> In order to support revocation of the discharge, the Debtor's failure to deliver the [estate asset] must also have been done fraudulently. Fraudulent intent may be established by showing that the debtor knowingly made an omission that misleads the trustee or that the debtor engaged in a fraudulent course of conduct. *In re Kasden*, 209 B.R. at 244. A debtor's intent may be inferred from all the surrounding circumstances where the debtor's pattern of conduct supports a finding of fraudulent intent. *Id.* The focus is on whether the debtor's actions appear so inconsistent with his self-serving statement of intent that the proof leads the court to disbelieve the debtor. *Id.*

*Klages,* 381 B.R. at 554. Although the bankruptcy court did not specifically address this element in its order, it is clear that it determined all of the elements – including fraudulent intent – of a cause of action under 11 U.S.C. § 727(d)(2) had been established. The order discusses the conflicting testimony of the witnesses and the natural inferences drawn from the evidence. "Fraud is rarely established by admission. Instead, the trial court must look at the circumstantial evidence and the events that occurred to try to determine intent." *Klages,* 381 B.R. at 554.

The bankruptcy court determined that the explanation of the ownership of the Colorado LLC, the Minnesota LLC, and the Viking note payments was simply not credible. The bankruptcy court made this determination after carefully observing the testimony of Chad Toftness, his father, and other witnesses. We afford due deference to the bankruptcy court's determination regarding credibility and find nothing in the

9

record to reverse that determination. The bankruptcy court's factual findings are supported by the evidence and the bankruptcy court correctly applied the law.

Chad Toftness argues on appeal that he should not be required to "prove a negative" by producing documents that do not exist. His argument misses the point. The bankruptcy court found the testimonies of Dennis Toftness, Chad Toftness, and Clint Lecy to be not credible. That, combined with the actions of Chad Toftness in connection with the operations of Coating Specialties, Inc., and subsequently the Colorado and Minnesota LLCs, the manner in which the books were handled for the companies, the use of the company funds, and the manner in which the Viking note proceeds were disbursed were sufficient evidence to establish the trustee's prima facie case under 11 U.S.C. § 727(d)(2). Upon establishment of the trustee's prima facie case, the burden of proof shifted to Chad Toftness. *Cadlerock Jt. Venture II, L.P. v. Sandiford (In re Sandiford)*, 394 B.R. 487, 490 (B.A.P. 8th Cir. 2008). Since his testimony was found to not be credible, and since there was no documentation produced to support his allegations, he failed to meet his burden.

### *DECISION*

Accordingly, we affirm the decision of the bankruptcy court.

_____